Pokrzywnicki, Appellant, *v.* Kozak, Jr., et al.

6

Argued September 27, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Alexander J. Bielski,* with him *Myron E. Rowley, Ralph E. Smith* and *Rowley & Smith,* for appellant.

*Lawrence H. Stern,* with him *Frank E. Reed,* for appellees.

OPINION BY MR. JUSTICE JONES, October 30, 1945:

The question in this case is whether the learned chancellor of the court below abused his discretion when he denied the plaintiff's motion for leave to file exceptions to an adjudication and decree *nisi, nunc pro tunc.* While the appeal is necessarily from the final decree which was entered on the basis of the decree *nisi,* the merits of the controversy are not before us.

Under Equity Rule 69, exceptions to an adjudication and decree *nisi* may be filed, as of right, by either party within ten days after notice thereof. The Equity Rules were not intended, however, to be inexorably binding: *Borough of Sunbury v. The Sunbury & Susque-*

*hanna Railway Company,* 241 Pa. 357, 360, 88 A. 543. In other words, they are not to be so administered as to work inequity. Accordingly, it has been held that it lies within the discretion of a chancellor to permit the filing of exceptions *nunc pro tunc* after the ten days covered by a notice have expired: *Hinnershitz v. United Traction Company,* 206 Pa. 91, 97, 55 A. 841. But, the discretion is a legal one and, if abused in its exercise, the abuse can be corrected or rectified on appeal: *Mielcuszny v. Rosol,* 317 Pa. 91, 93-94, 176 A. 236. In the case last cited, it was said that, "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion . . . the judgment exercised is manifestly unreasonable . . . discretion is abused."

With these principles in mind, it seems clear to us that the undisputed facts of record plainly indicate an abuse of discretion in the instant case on the part of the learned chancellor. The suit sought an accounting of a partnership business wherein the plaintiff claimed to have a one-half interest through the sale and assignment thereof by a former partner. From a time antedating the trial, if not actually from the time the bill was filed, and down to the taking of this appeal, the plaintiff, who acted herein by a sister as his attorney-in-fact, was outside the continental confines of the country as a member of its armed forces. As the plaintiff was a voluntary actor in this litigation, the only pertinency that reasonably attaches because of his necessary absence from the country is the fact that, obviously, he could not have prompt and timely knowledge of each step taken in the proceeding but was peculiarly dependent upon the services of his counsel for the protection of his interests.

Although the suit was instituted in Beaver County, the plaintiff's principal counsel and trial attorney was located in Pittsburgh. The latter had associated with him counsel in Beaver upon whom notices or other papers in the proceeding were servable. The trial of the

case, which consumed three court days, was concluded on March 24, 1944. Due to the retirement of the trial judge the following summer without disposing of the case, it was taken up by another member of the court who filed an adjudication, thirteen pages in length, and a decree *nisi* on March 19, 1945.

The docket entries show that notices of the filing of the adjudication and decree *nisi* were mailed on March 19th by the prothonotary of Beaver County to local counsel (being all whose appearances had been noted of record). These notices were presumably received by the addressees at least by March 20th. The plaintiff's Beaver County attorneys notified their Pittsburgh colleague of the adjudication and decree *nisi* by letter of March 22nd, which the latter received on March 23rd; and on March 29th they again wrote him stating that he should prepare exceptions and they would see "that the case goes up regularly on the argument list."

On December 10, 1944, the plaintiff's Pittsburgh attorney had suffered serious physical injury in an accident which kept him out of his office until the latter part of February 1945; and, for a period thereafter covering the dates herein material, he was able to devote only part time to his work which embraced accumulated matters including the necessary preparation of paper books in two pending appeals to the Superior Court in other matters. Nevertheless, plaintiff's Pittsburgh counsel did undertake the preparation of exceptions to the adjudication and decree *nisi* on March 29th. These, he completed and sent to his associate counsel in Beaver on April 6th for filing. Counsel for one of the defendants having refused to accept service of the exceptions unless the chancellor made an order allowing them to be filed out of time, the exceptions were lodged with the prothonotary on April 12th and plaintiff's counsel then formally moved the chancellor to allow them to be marked filed *nunc pro tunc*. The motion was denied by the chancellor in an order dated April 13, 1945. At that time, no final decree had yet been entered.

In these circumstances, we fail to see what possible justification there can be for the learned chancellor's action with respect to the plaintiff's motion. The matter had been in the hands of the court for a year all but five days. In fact, counsel did not suffer his incapacitating injuries until almost nine months after the conclusion of the trial where he had been the active legal participant in the plaintiff's behalf. Moreover, the exceptions had actually been prepared and left for filing within a relatively short time after the ten-day notice had expired. There is nothing in the record from which it could be inferred that counsel was trifling with the court's convenience or with the law's processes. Indeed it is undisputed that plaintiff's chief counsel was endeavoring to serve his client at considerable physical disadvantage.

But, even assuming, *causa arguendo,* that counsel was derelict in the discharge of his duty to the plaintiff, there is still a further cogent reason why the conscience of the chancellor should have been moved to grant the plaintiff's motion. Although the Soldiers' and Sailors' Civil Relief Act of 1940 (Oct. 17, 1940, c. 888, § 1, 54 Stat. 1178, 50 U.S.C.A. App. §§ 501 et seq.) is designed to protect against civil liability certain persons in the armed forces during their absence and here the plaintiff is the actor in the litigation, the motive behind the Act cited is the furtherance of a sound policy that one absent from the country in the armed forces should not have his legal rights summarily dealt with because of his counsel's failure to act within a period of time which may be enlarged in the discretion of the court upon timely application. That attitude is all the more justifiable when what is sought through a reasonable indulgence of time is merely an opportunity to have the chancellor, who neither saw nor heard the witnesses, review his findings and conclusions in the light of specific exceptions and oral argument thereon. Certainly, no rights of the defendants could be unjustly affected nor the prestige of the court impaired in the circumstances by

the chancellor's extending to the plaintiff the right to point out for correction any possible error in the adjudication or decree *nisi*.

The argument that plaintiff's counsel should have applied within the ten-day period for an extension of the time for the filing of exceptions is but an elevation of form above substance. The chancellor's discretion was none the less exercisable in favor of the extension even though the ten days provided by the Rule for the filing of exceptions had expired.

The decree of the court below is reversed with directions that the plaintiff's exceptions be permitted to be filed *nunc pro tunc* and that the matter be proceeded with thereafter to final decree; the costs on this appeal to be borne by the appellees.