## Mills Estate (No. 1)

*Thomas W. Maher* and *Benjamin H. Renshaw, Jr.*, for petitioners.

*Russell Conwell Cooney, Ethan Allen Doty* and *W. Albert Sanders*, for respondents.

LEFEVER, J., December 7, 1951.—The petition before us is for leave to file exceptions nunc pro tunc to the decision of Judge Boland, filed June 15, 1951, dismissing an appeal from the register of wills. The case is at issue on petition and answer.

Birdie S. Mills died on March 19, 1949, leaving a last will and testament, dated March 12, 1949, wherein she bequeathed $1,200 to provide chimes for the Mayfair United Presbyterian Church; and gave the residue of her estate in trust to pay the income for life to her sister, Florence Willouer (with power in the trustees to consume principal for her maintenance and support), and on her death to distribute the remainder in fee to Robert Willouer, son of her sister. Hugh F. Gerhard probated the will, qualified as executor, administered the estate, and on October 5, 1949, filed his final account. Subsequently, on October 28, 1949, petitioners, who are testatrix's sister, Laura V. Shields, and brother, Elmer E. E. Shields, appealed from the probate on the ground that testatrix lacked testamentary capacity to make a will on March 12, 1949, and that the will was procured by undue influence.

Petitioners opposed any distribution of income or principal pending decision on the appeal. On May 3, 1950, Judge Bolger filed an adjudication in which he awarded the income to the life tenant because she was aged and "in straitened circumstances and to deprive her of whatever interest she may have in this estate indefinitely will work tremendous hardships on her." Petitioners filed exceptions to that adjudication on May 16, 1950. Disposition of the exceptions was continued by agreement, pending final decision on the appeal from the register.

Judge Boland heard testimony in re the appeal on November 13, 14, 15, and 16, 1950. On June 15, 1951, he filed a carefully prepared and comprehensive opinion in which he concluded that: "There is not one scintilla of evidence as to any lack of testamentary capacity" and "There is no evidence of a weak will or undue influence". He dismissed the appeal.

No exceptions were filed. However, on September 10, 1951, an appeal direct from Judge Boland's decision (without action of this court en banc), was filed with the Supreme Court of Pennsylvania. That appeal was quashed by the Supreme Court on October 3, 1951.

The present petition was filed on October 11, 1951. It is alleged that Thomas S. Lanard, one of the attorneys for petitioners, died on May 29, 1951, 17 days prior to the filing of Judge Boland's decision, and that "Your petitioners were uncertain as to what their rights were and as to what course to pursue because of their inability to consult with their attorney, Thomas S. Lanard, Esq. . . . By reason of this situation, your petitioners failed to file exceptions . . ."

This was denied in answers filed by the Mayfair United Presbyterian Church and by the trustees under the will.

Petitioners' allegation as to the cause of their delay is incredible. The record controverts it. The formal appearance slip entered in this case at the hearings on November 13, 14, 15 and 16, 1950, reads:

"Enter my appearance for Laura V. Shields, Elmer E. E. Shields, contestants sur appeal from Register of Wills—'Benjamin H. Renshaw, Esq., with him Thomas W. Maher and Thomas S. Lanard'."

Mr. Renshaw actively and vigorously tried this case, aided at times in the examination and cross-examination of witnesses by Mr. Maher and by Mr. Lanard. The record indicates that Mr. Renshaw was the chief counsel in this case. He was, or should have been, available to petitioners for consultation following the dismissal of the appeal.

All three of petitioners' counsel in this case were experienced lawyers. Apparently, they were familiar with the rule of this court requiring exceptions to be filed within 15 days of the date a judge filed an opinion or adjudication of which they complain, for they filed timely exceptions to Judge Bolger's adjudication of May 3, 1950. Moreover, they prided themselves on the requirement that lawyers be meticulous and careful in their practice, as is evident from their highly critical and protracted cross-examination of the scrivener as to the draftsmanship of testatrix's will. Presumably, Mr. Renshaw or Mr. Maher promptly notified petitioners of the decision of the hearing judge and of petitioners' rights and remedies in the premises.

We sympathize with the problem faced by litigants whose counsel dies in the course of litigation. Moreover, we are loath to foreclose their rights through a technicality. Were we satisfied that the death of Thomas S. Lanard was the cause of this delay, we would be strongly moved to allow the filing of exceptions nunc pro tunc, irrespective of the ultimate outcome of those

exceptions. However, there has been no tenable explanation of the unusual delay of four months. Furthermore, this was not the first delay in this case, the appeal from the register was not filed until after the executor had filed his account. Moreover, in addition to these delays petitioners have continually opposed relief to a needy, elderly lady pending final disposition of the case. ". . . it lies within the discretion of a chancellor to permit the filing of exceptions *nunc pro tunc*"; Pokrzywnicki v. Kozak, Jr., et al., 353 Pa. 5, 7 (1945); and this discretion should be exercised "only for an urgent cause shown": Kohler's Estate, 58 Montg. 10, 14 (1941). No such cause has here been shown. We, therefore are of the opinion that the petition should be dismissed.

We are fortified in our decision by the conclusion, reached after careful review of the entire record, that the opinion and decision of Judge Boland is clearly correct. Ethan Allen Doty, prominent and experienced lawyer, had two lengthy conferences with testatrix. On both occasions testatrix demonstrated a clear knowledge and understanding of her assets, who were her relatives, whom she desired to benefit, and why she did not wish to include petitioners. Hers is a natural will; it creates a memorial for her deceased husband and daughter, in her own church, and gives the residue to the use of her needy sister, with remainder to that sister's son, who lived with and aided testatrix in her last days. She read and reread the will and Mr. Doty carefully explained the various provisions of it to her. Not only Mr. Doty, but Mr. Gerhard, real estate broker, who had previously had business dealings with testatrix, and Maurice Dugan, Jr., real estate broker, witnessed the execution of the will and were all emphatic and unequivocal that testatrix fully understood the provisions of the document and that she was

executing her will. In addition, Donald Kilcullen, who delivered a refrigerator to testatrix's home at the time the will was being executed; Francis O'Brien and Marie W. O'Brien, second floor tenants of testatrix's home; Mary J. Hunter, registered nurse, who leased a garage from testatrix; Mrs. Vera B. Lear, a neighbor; and Rev. George W. Henderson, minister of the Mayfair United Presbyterian Church, all saw her on March 12, 1949, the date of the execution of the will, or within a day or two thereof, and all were positive that she then had full testamentary capacity. All of these were completely disinterested witnesses, with the possible exception of Rev. Mr. Henderson, whose church is one of the beneficiaries.

The witnesses offered by contestants stood in sharp contrast. Dr. S. Gordon Castigliano, a cancer specialist who was treating testatrix and last saw her on May 5, 1948, when pressed by contestants testified: "*I don't know* whether this patient was sufficiently lucid mentally on the fourth of March to have been able to have made a will." Rev. Walter Erb, pastor of a nearby church, testified that he saw testatrix *on the day before she died* and could not understand her. Frank B. Wiegand, the husband of a niece of testatrix's husband, testified that testatrix was quite ill on March 11, 1949, and he had a great deal of difficulty in understanding her; Judge Boland properly characterized his testimony as "most unsatisfactory when carefully analyzed". The testimony of contestants' witnesses boiled down to the point that it was difficult to understand her. From all the evidence it appears that this difficulty in understanding her was caused by the tumor of her jaw and oral cavity which forced her to talk out of the one side of her mouth and sound like a person speaking with food in her mouth. This was apparently only a physical handicap and in

no sense militated against her mental capacity or understanding. None of this testimony was specific as to the *mental* condition or capacity of testatrix *on the date of the execution of the will.* None of these witnesses saw her on that date. This is of utmost importance because admittedly testatrix at this time was suffering from terminal stages of cancer and was taking opiates. Her condition and mental capacity at the time she executed the will alone determines the validity of that document.

It is significant that contestants did not identify or produce in court the family physician who, according to Dr. Castigliano, regularly attended testatrix. Presumably, he was familiar with her case, knew her habits and the progress of the disease, and saw her shortly before her death. His testimony as to her condition on or about March 12, 1949, would have been highly important.

Petitioners produced numerous witnesses and spent many hours in endeavoring to show that testatrix generally signed her name "Birdie *L.* Mills" instead of "Birdie *S.* Mills". It is noteworthy that the alleged "L" on many of the documents looks suspiciously like an "S". No handwriting expert was produced. But far more important, the explanation of the scrivener (quoted in Judge Boland's opinion) is a complete refutation of petitioner's contention, viz.:

"I stated that if the real estate was in the name of Birdie S. Mills [as Mr. Gerhard had just stated] that the will should be prepared as Birdie S. Mills in conformity with the title to the real estate and she said, 'Well, I think that is the way I want it to be done.'" As Judge Boland stated of the scrivener: "His testimony was most clear that she gave her name to him as 'L' but that after Mr. Gerhard, who had sold her the property, said her deed was in the name of Birdie *S.*

Mills, he suggested that it would be better to use that name for signature. It is a matter of opinion whether the scrivener should have used both names in the will, but the explanation given by an able and experienced lawyer as to how the will came to be executed in the manner it was executed, is clear and convincing and I find the facts are true as stated by Mr. Doty. . . ."

Clients customarily take the advice of their lawyers, in whom they have faith and trust, as to the means of executing a document. The testimony is unequivocal and clear that testatrix did that in this case. Testatrix's use of "S" instead of "L" as a middle initial under these circumstances does not raise the slightest inference of the existence of lack of testamentary capacity or of undue influence.

We agree with the hearing judge that there was insufficient evidence to warrant the granting of an issue devisavit vel non and that while certain of the testimony was in part contradictory a verdict of the jury "finding against the will would have to be reversed".

". . . there can be no substantial dispute where a verdict of a jury against the will would have to be set aside as against the weight of the evidence.": Higbee Will, 365 Pa. 381, 383 (1950).

The findings of fact of the hearing judge who has heard and seen the witnesses are entitled to great weight and will not be reversed "unless there was an abuse of discretion": Zakatoff Will, 367 Pa. 542, 552 (1951). Even if we were to allow the *filing* of the exceptions nunc pro tunc, we should ultimately be compelled to dismiss the exceptions on the merits. It is pointless, therefore, to further delay this case and longer postpone the accomplishment of the purposes expressed by testatrix in her will.

For the foregoing reasons, the petition is dismissed.