546 A.2d 1212

**DONEGAL MUTUAL INSURANCE COMPANY, Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**DONEGAL MUTUAL INSURANCE COMPANY, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued June 3, 1988.

Filed Aug. 24, 1988.

Joel D. Smith, Lancaster, for appellant (at 3084) and appellee (at 3235).

Michael J. Hohenadel, Lancaster, for appellant (at 3235) and appellee (at 3084).

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN, BECK, KELLY, POPOVICH and MELINSON, JJ.

WIEAND, Judge:

The issue in this appeal is whether an uninsured pedestrian, who has been struck by an insured vehicle, is a member of the household of a cousin from whom the pedestrian rented a room in order to have a place to stay when he was in Harrisburg. This issue must be determined in order to decide whether it is the insurer of the offending motor vehicle or the insurer of the cousin's non-involved vehicle which is liable for basic loss benefits under the now repealed No-fault Motor Vehicle Insurance Act.[1] Before reaching this issue, however, we must first determine whether the trial court abused its discretion by allowing appellant to file a motion for post-trial relief nunc pro tunc after a panel of this Court had quashed an earlier appeal for failure to file exceptions to the trial court's decision.

On January 1, 1981, Frederick Goldsborough, an uninsured pedestrian, was struck and injured in Harrisburg, Pennsylvania, by a vehicle insured by Donegal Mutual Insurance Company (Donegal). Basic loss benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act were paid by Donegal. On May 25, 1982, however, Donegal filed an action against State Farm Mutual Automobile In-

1. Act of July 19, 1974, P.L. 489, No. 176 §§ 101–701, 40 P.S. §§ 1009.101–.701, repealed by Act of February 12, 1984, P.L. 26, No. 11 § 8(a), effective October 1, 1984.

surance Company (State Farm) seeking a declaratory judgment that State Farm was primarily liable for Goldsborough's basic loss benefits. Goldsborough, it was alleged, had resided with and had been a member of the household of his cousin, Kathryn E. Chivis, who had lived in Harrisburg and whose vehicle had been insured by State Farm. State Farm denied such liability, contending that Goldsborough's principal residence had been in Wyoming, Delaware and that he had merely rented a room from his cousin so that he would have a place to stay while he was temporarily in Harrisburg. By agreement of the parties, the dispute was submitted to the trial court for decision on the basis of pre-trial depositions. The trial court determined that Goldsborough had been a member of the Chivis household and held that State Farm was liable for the payment of basic loss benefits. The court's order, dated August 1, 1984, appeared to be a final order; it contained no reference to the filing of exceptions and found in favor of Donegal and against State Farm. Judgment was entered, upon praecipe, in accordance with the trial court's decision.

An appeal was filed by State Farm on August 29, 1984. This appeal, however, was quashed by a panel of the Superior Court, whose memorandum recited that in the absence of exceptions the appeal was premature. Thereafter, on October 3, 1986, the trial court, on motion, allowed State Farm to file exceptions nunc pro tunc. Pursuant thereto, State Farm filed a motion for post-trial relief. This motion was denied on the merits on October 31, 1986, by an order which entered judgment in favor of Donegal and against State Farm. State Farm filed a timely appeal from this judgment.[2]

2. On December 8, 1986, Donegal filed an appeal from the order of October 3, 1986, which had allowed State Farm to file its motion for post-trial relief nunc pro tunc. This appeal was untimely. It was filed sixty-six days after entry of the order appealed and thirty-eight days after final judgment had been entered in its favor. Donegal's appeal, therefore, is quashed. Its argument that the trial court erred by allowing post-trial motions to be filed nunc pro tunc, however, must be resolved if we are to consider the merits of State Farm's appeal.

■ Whether to permit the nunc pro tunc filing of a motion for post-trial relief in the nature of exceptions is clearly within the discretion of the trial court, and its decision will not be reversed in the absence of a manifest abuse thereof. *Pokrzywnicki v. Kozak,* 353 Pa. 5, 7, 44 A.2d 247, 248 (1945). See also: *Haefele v. Davis,* 373 Pa. 34, 40, 95 A.2d 195, 198 (1953); *Hinnershitz v. United Traction Co.,* 206 Pa. 91, 97, 55 A. 841, 843 (1903); *Brodsky v. Philadelphia Athletic Club,* 277 Pa.Super. 549, 553, 419 A.2d 1285, 1287 (1980). An abuse of discretion in allowing the nunc pro tunc filing of a motion for post-trial relief is not merely an error of judgment. Only if "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will" can it be said that the trial court abused its discretion. See: *Garrett's Estate,* 335 Pa. 287, 292–293, 6 A.2d 858, 860 (1939). Indeed, the discretion which the trial court exercises in allowing a post-trial motion to be filed nunc pro tunc is such that it will seldom, if ever, be reversed on appeal. Even where a reviewing court would have decided differently, it will not interfere with the trial court's exercise of discretion. In the instant case, there is no basis whatsoever for finding that the trial court abused its discretion. There is not the slightest suggestion of "partiality, prejudice, bias, or ill-will"; and, as we shall demonstrate, the trial court's exercise of judgment was not only reasonable but eminently correct.

■ In cases where trial courts, sitting without a jury, have entered orders which appear to be final, both the Supreme Court and this Court have excused failures to file exceptions and have entertained the merits of appeals from such orders. See, e.g.: *Commonwealth v. Derry Township,* 466 Pa. 31, 41–42, 351 A.2d 606, 611 (1976) (where nothing on face of order would indicate that it is anything but a final order, failure to file exceptions will be excused); *Altomare v. Altomare,* 355 Pa.Super. 391, 393 n. 1, 513 A.2d 486, 487 n. 1 (1986) (failure to file post-trial motions excused where order appears final); *In re Estate of Do-*

*rone,* 349 Pa.Super. 59, 64, 502 A.2d 1271, 1274 (1985), *aff'd,* 517 Pa. 3, 534 A.2d 452 (1987) (failure to file exceptions excused where order neither comports with Rule 1517 nor contains suggestion that exceptions must be filed); *Storti v. Minnesota Mutual Life Ins. Co.,* 331 Pa.Super. 26, 28, 479 A.2d 1061, 1062 (1984) (same). On other occasions, when the reviewing court has deemed the appeal premature, it has remanded for the purpose of allowing an aggrieved party to file exceptions nunc pro tunc. See, e.g.: *Patrick & Wilkins Co. v. Adams,* 456 Pa. 566, 568, 322 A.2d 341, 342 (1974) (case remanded for filing of exceptions where decree was "final"); *Slotsky v. Gellar,* 455 Pa. 148, 151, 314 A.2d 495, 496 (1974) (case remanded in interest of justice to allow exceptions to be filed nunc pro tunc); *Miller v. Miller,* 359 Pa.Super. 183, 186–187, 518 A.2d 841, 842–43 (1986) (case remanded for filing exceptions to decree which was "final"). In all of these cases, the reviewing court overlooked minor, procedural error in order to preserve the right of appellate review.

In the instant case, the trial court had entered an order which did not suggest by its express language or by necessary implication that the order was not intended to be final. Not only did the order appear to be final, but a judgment was actually entered on the basis thereof. On appeal, a panel of this Court nevertheless determined that the trial court's order was not final. It said: "Because no exceptions were filed ... this appeal is *premature* and must be quashed." Thereafter, the trial court did what the panel of this Court might have done. It acted to preserve the right of appellate review by allowing exceptions to be filed nunc pro tunc. In this manner, the trial court was able to reconsider and pass upon the alleged errors which the appellant intended to argue on appeal; and, without prejudice to either party, the record in the trial court was readied for meaningful appellate review.

There was nothing in this Court's quashing of the earlier, premature appeal which prevented the trial court from granting State Farm's request for leave to file exceptions

nunc pro tunc. Reviewing the merits of State Farm's post-trial motion did not erode or undermine this Court's prior decision which found an earlier appeal premature. For this Court to refuse to consider an appeal after the trial court had allowed appellant's post-trial motion and then denied it on its merits would unfairly deprive appellant of any right of review of the trial court's declaratory judgment. Because the trial court did not abuse its discretion by allowing post-trial motions to be filed nunc pro tunc and because elementary justice requires that State Farm have the right of appellate review, we consider the substantive aspects of this appeal.

Section 204 of the No-fault Act, *supra*, 40 P.S. § 1009.204 (repealed), established "categories and priorities as between insurers responsible for payment of benefits." *Schimmelbusch v. Royal–Globe Ins. Co.*, 247 Pa.Super. 28, 31, 371 A.2d 1021, 1023 (1977). This section provides, in pertinent part, as follows:

> (a) **Applicable security.**—The security for the payment of basic loss benefits applicable to an injury to:
>
> . . . .
>
> (2) an insured is the security under which the victim or deceased victim is insured;
>
> . . . .
>
> (4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. . . .

"In determining the applicable source of basic loss benefits under section 204's priority system, the pertinence of each subsection must be considered seriatim—that is, the applicability of each preceding subsection must be excluded before the next may be considered." *Tyler v. Insurance Co. of North America*, 311 Pa.Super. 25, 30, 457 A.2d 95, 97 (1983).

Although it is undisputed that Goldsborough himself was uninsured, Donegal contends that he was an insured under the policy of insurance which had been written by State

Farm to cover the vehicle owned by Kathryn Chivis. For purposes of interpreting the statute, we look to the definition of "insured" in Section 103 of the Act.[3] There, we observe that

'Insured' means:

(A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and

(B) a spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured if—

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) in residence in the same household with a named insured.

An individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere.

In the instant case, the issue is whether Goldsborough was "in residence in the same household with [Chivis]."

■ "The determination of one's residency status for purposes of the [No-fault] Act constitutes a mixed question of law and fact and, therefore, the trial court's finding is reviewable by this Court." *Boswell v. South Carolina Ins. Co.*, 353 Pa.Super. 108, 118, 509 A.2d 358, 363 (1986). This is peculiarly so where, as here, the trial court did not benefit from observing the witnesses but relied, as must we, upon a transcript of depositions taken prior to submission of the issue to the trial court for decision. See: *Estate of McKinley*, 461 Pa. 731, 734 n. 1, 337 A.2d 851, 853 n. 1 (1975); *American Express Co. v. Burgis*, 328 Pa.Super. 167, 172, 476 A.2d 944, 947 (1984); *Bell v. Bell*, 326 Pa.Super. 237, 239, 473 A.2d 1069, 1070 (1984).

■ The term "household" is defined as "[a] family living together." Black's Law Dictionary 666 (5th ed. 1979). See:

**3.** 40 P.S. § 1009.103.

*Schurler v. Industrial Commission,* 86 Utah 284, 289–91, 43 P.2d 696, 699 (1935). "The term 'household' is generally synonymous with 'family' for insurance purposes, and includes those who dwell together as a family under the same roof." Black's Law Dictionary 666 (5th ed. 1979). See: *Van Overbeke v. State Farm Mutual Automobile Ins. Co.,* 303 Minn. 387, 391–93, 227 N.W.2d 807, 810 (1975). See also: *Bartholet v. Berkness,* 291 Minn. 123, 125–27, 189 N.W.2d 410, 412 (1971). The term does not apply to a relative, however close, who lives elsewhere; nor does it apply to a resident of the same residence who is not a member of the family, i.e., one who enjoys all the prerogatives of family life. *State Farm Mutual Automobile Ins. Co. v. Snyder,* 122 Ga.App. 584, 585–86, 178 S.E.2d 215, 216 (1970). See also: 6C Appleman, Insurance Law and Practice (Buckley ed.), § 4411. Thus, "one who, though related and living in the same home, maintains a separate apartment therein and divides the expense of maintenance" is not a member of the same household as an insured who resides there. 6C Appleman, Insurance Law and Practice (Buckley ed.), § 4411. Similarly, a son and daughter-in-law who live in the parents' home but who have separate bedrooms and living rooms, who buy their own groceries and usually do not eat with the parents, and who divide utility bills with the parents, as a matter of law, are not members of the parents' household. *Hoff v. Hoff,* 132 Pa.Super. 431, 1 A.2d 506 (1938). So also, a mother who resides in a building owned by her daughter, but who pays rent and utilities, has a separate entrance, has her own kitchen, and does her own cooking is not a member of the same household as her daughter. *Drake v. Donegal Mutual Ins. Co.,* 422 F.Supp. 272 (W.D.Pa.1976). And, a son and grandson are not members of the grandfather's household where they are living in the grandfather's home under a temporary arrangement, where the son has stored rather than sold his furniture, and where the two families to a large extent maintain their separate identities. *Mission Ins. Co. v. Ward,* 487 S.W.2d 449 (Mo.1972). Something more than mere temporary sojourn is required. *A.G. by Waite v. Travelers Ins. Co.,* 112

Wis.2d 18, 21–22, 331 N.W.2d 643, 645 (1983). Finally, a landlady who rents a room to a boarder and charges him for meals is not a member of the boarder's household within the terms of a liability policy covering injuries to persons other than those of the same household. *Umbarger v. State Farm Mutual Automobile Ins. Co.*, 218 Iowa 203, 254 N.W. 87 (1934). See also: *Rivera v. State Farm Mutual Automobile Ins. Co.*, 34 D. & C.2d 797 (Montg. 1964), *aff'd*, 205 Pa.Super. 30, 206 A.2d 338 (1965) (averment that cousin was boarder is not admission that cousin was member of insured's household).

■ In the instant case, the trial court determined that Goldsborough's principal place of residence was in Wyoming, Delaware, where he lived with his mother for at least nine months of the year. When he frequently travelled to Baltimore, Harrisburg, Philadelphia, New York, and New Jersey, therefore, he did not change his residence. At the time of his accident, Goldsborough was staying in a basement room at 141 Eddington Avenue, Harrisburg, where his cousin, Kathryn Chivis, lived with her daughter, Quianna Agent, and Quianna's father, Cornelius Agent. Goldsborough paid Chivis a room rental of thirty ($30) dollars per week. In addition to his right to occupy the room, Goldsborough was permitted to use the kitchen and laundry room and was allowed to watch television in the family room. However, he did not eat his meals with the family and was permitted to take from the refrigerator only food which he had purchased. Because there was not a separate entrance to his room, he was given a key to the front door. Thus, he was able to come and go freely as he pleased. Sometimes while in Harrisburg he slept in the room which he had leased, and sometimes he did not. He used his cousin's address to establish eligibility to receive public assistance and food stamps, but, except for mail from the Pennsylvania Department of Public Welfare, he received only an occasional letter at this address. Kathryn Chivis testified that her family unit consisted of her daughter, her daughter's father, and herself. She did not consider and did not

want her cousin to be a part of her family, because his lifestyle was entirely different than theirs.

It seems clear from the evidence that Goldsborough was not "in residence in the same household" with his cousin as contemplated by the No-fault Motor Vehicle Insurance Act. Simply stated, his residence was elsewhere. He was not a part of the social unit which consisted of those who lived together as a family in the Harrisburg residence. Under the Pennsylvania No-fault Motor Vehicle Insurance Act, therefore, Goldsborough was not an insured of State Farm. It was Donegal and not State Farm which was primarily liable for the payment of basic loss benefits to Goldsborough. When the trial court determined otherwise, it erred.

Judgment reversed and now entered in favor of appellant.