**Boezi v. Erie Insurance Group**

C.P. of Lackawanna County, no. 2004 CV 2260.

*Jill H. Miller,* for plaintiff.
*Edward S. Neyhart,* for defendant.

MINORA, *J.,* February 10, 2005—

## I. INTRODUCTION

Currently before the court is the petitioner's petition to appoint arbitrators for their unanswered motorist claim.

By way of background, on July 25, 2002, the plaintiff, Richard Boezi, was injured in a motor vehicle accident while on duty as a police officer. As a result of his injuries, Mr. Boezi is allegedly permanently and totally disabled. On the date of the subject accident, Mr. Boezi allegedly lived with his mother, wife and four minor children at 733-735 Taylor Avenue, Scranton, Pennsyl-

vania. Mr. Boezi's mother, Gaetana Boezi, maintained an automobile insurance policy with defendant in this matter, Erie Insurance Group, which policy provided underinsured motorist (UIM) protection for any resident relative. A copy of the subject policy is attached to the hearing transcript of September 28, 2004, and marked as defendant exhibit "1." A relative is defined in the policy as "a resident of your household who is a person related to you by blood, marriage or adoption . . . ." A resident is further defined in the policy as "a person who physically lives with you in your household." Based upon the nature and extent of his injuries and damages, together with the fact that Mr. Boezi maintains he is a relative and resident of Gaetana Boezi's household, a claim for UIM coverage under Ms. Boezi's automobile policy with Erie was made. Erie denied coverage maintaining that Mr. Boezi was not a resident of his mother's household and has no standing to make a UIM claim.

On September 28, 2004, undersigned held a hearing on the issue of residency. The petitioner presented the testimony of Gaetana Boezi and Richard Boezi. After the conclusion of the testimony, the undersigned directed the parties to submit proposed findings of facts and conclusions of law along with briefs if so desired. The parties did indeed opt to file proposed findings of fact, conclusions of law and written argument, thus rendering this matter ripe for disposition.

## II. ISSUES

Whether Richard Boezi is a "resident" of Gaetana Boezi's household and is therefore entitled to coverage for UIM benefits under her automobile policy issued by Erie Insurance Group.

## III. JUDICIALLY ACCEPTED FINDINGS OF FACT FROM THE HEARING OF SEPTEMBER 28, 2004[1]

(1) Gaetana Boezi is 65 years old. She is a single parent who resides with her son, Richard Boezi, at 733-735 Taylor Avenue, Scranton, Pennsylvania (the residence). (N.T. p. 5.)

(2) Ms. Boezi purchased the residence with her son, Richard, in 1992. In July 2002,[2] Richard Boezi lived with his mother, his wife and four children at the residence. (N.T. pp. 5-6.)

(3) The residence was originally constructed as a side-by-side double family residence. When they took possession of the residence, Ms. Boezi and her son, Richard, moved into the 735 side because it was in better condition. They intended to renovate the 733 side for rental income. (N.T. pp. 6-7, 47-48.)

(4) Prior to purchasing the residence, Ms. Boezi and her son, Richard, did not live together. Soon after moving into the residence, Richard Boezi married Lorie Boezi, and she and her three young children moved into residence with Richard and his mother. (N.T. pp. 8-9.)

(5) From the time Lorie Boezi and her children moved into the residence, the family, including Gaetana Boezi, used the side-by-side double family residence as a single family home. (N.T. pp. 9, 23-25; pp. 10, 1-3.)

---

1. All references are to transcript and exhibits submitted at the September 28, 2004 hearing.

2. On July 25, 2002, petitioner, Richard Boezi, was injured while operating a motor vehicle which is insured for underinsured motorist protection by the respondent. Unless otherwise specified, all findings of fact pertain to July 25, 2002, the date of the accident.

(6) A common doorway existed at the basement level of the residence allowing free unfettered access between both sides of the residence. The basement areas were used for storage and a family laundry room. (N.T. p. 11.)

(7) Richard Boezi created a second doorway on the second floor to permit even greater access between both sides of the structure so the family could use both sides of the structure and both bathrooms. (N.T. pp. 11-12.)

(8) At the time of the subject accident, Richard Boezi was renovating the third floor. (N.T. p. 12.)

(9) On the first floor at the rear of the residence, a common deck area permitted additional access to and from the kitchens on both sides of the residence. (N.T. p. 13.)

(10) The entire family would normally take meals together on the 733 side of the residence. (N.T. p. 15.)

(11) On Sundays the family dined together on the 735 side of the residence. (N.T. p. 15.)

(12) Lorie Boezi prepared meals for the entire family on a regular basis. (N.T. p. 15.)

(13) On Sundays, Gaetana Boezi prepared meals for the family. (N.T. p. 16.)

(14) Lorie Boezi did the bulk of the grocery shopping for the entire family. (N.T. p. 16.)

(15) Gaetana Boezi purchased individual food items for the family as needed. (N.T. p. 16.)

(16) Lorie Boezi and Gaetana Boezi both do the laundry for the entire family, sometimes together. There is one working washer and two working dryers in the basement of the residence. (N.T. pp. 16-17.)

(17) Gaetana Boezi and Richard Boezi are the owners of record identified on the deed to the residence. (Plain-

tiffs' exhibit "1".)

(18) Richard Boezi and Gaetana Boezi are the mortgagees of record for the residence. (N.T. pp. 6, 19 and plaintiffs' exhibit "4".)

(19) Gaetana Boezi and Richard Boezi each contribute equally to the payment of the mortgage and taxes. (N.T. p. 19.)

(20) Richard Boezi and Gaetana Boezi are the owners of record of the residence for property tax purposes. (Plaintiffs' exhibit "3".)

(21) Richard Boezi and Gaetana Boezi are the named insureds on the policy of homeowner's insurance for the residence. (Plaintiffs' exhibit "2".)

(22) When the Boezi children were younger, Gaetana Boezi regularly assisted her son and daughter-in-law with meal preparation, child care and supervision. (N.T. p. 21.)

(23) Richard Boezi was solely responsible for the upkeep and maintenance of the entire residence. (N.T. p. 22.)

(24) Richard Boezi made all decisions pertaining to maintenance and repair of the entire residence. (N.T. p. 22.)

(25) When the residence was purchased by the Boezis, the utilities were separate and have remained so because conversion of the utilities would be cost prohibitive. (N.T. p. 59.) Further, such a conversion would defeat the structure's original construction configuration for resale purposes down the road.

(26) When Richard Boezi and Gaetana Boezi purchased the residence, their Erie Insurance agent, Bob

Maseychick, knew that they used the structure as a single family residence. (N.T. p. 34.)

(27) Richard Boezi and Gaetana Boezi are the named account holders on bank accounts used to pay the household expenses. (N.T. pp. 39-40.)

(28) Gaetana Boezi's bedroom is located on the 735 side of the structure. (N.T. p. 42.)

(29) The respondent's agent, Bob Maseychick, advised Richard Boezi and Gaetana Boezi to purchase homeowner's insurance for the 735 side and renter's insurance for the 733 side and, at one time, to switch the two policies. (N.T. pp. 46-47.)

(30) Richard Boezi and Gaetana Boezi have always followed the advice of their Erie Insurance agent relative to these insurance matters. (N.T. pp. 46-47.)

(31) Other than the decking adjoining the first floors, no other doorway could be constructed on the first floor without compromising the structural integrity of the building. (N.T. p. 49.)

(32) The master bedroom on the 733 side was used by Richard and Lorie Boezi. (N.T. p. 50.)

(33) The remaining bedrooms on the 733 side of the residence were used by some of the Boezi children. (N.T. p. 51.)

(34) The bathroom on the second floor of the 735 side was used by the entire family. (N.T. p. 51.)

(35) The third floor of 735 was being renovated for storage for the use of the entire family. (N.T. p. 51.)

(36) The master bedroom on the second floor of the 735 side was used by Gaetana Boezi as a bedroom. (N.T. p. 52.)

(37) Another bedroom on the second floor of the 735 side was occupied by one of the children, Stacy Boezi. (N.T. p. 52.)

(38) One bedroom on the second floor of the 735 side was used as a common area for all occupants. It was used as an office and computer room, and contains the children's toys and exercise equipment. (N.T. p. 53.)

(39) The remaining bedroom on the second floor of the 735 side is also used to support the needs of all the residents, since it is used to store the family's clothing due to inadequate closet space. (N.T. p. 53.)

(40) The household furnishings on the 735 side of the structure originally belonged to Gaetana Boezi. She brought them from her previous home. (N.T. p. 56.)

(41) The furnishings in the master bedroom on the 733 side originally belonged to Mrs. Lorie Boezi prior to her marriage to Richard Boezi. (N.T. p. 57.)

(42) The living room suite and dining room set on the 733 side originally belonged to Mrs. Lorie Boezi prior to her marriage to Richard Boezi. (N.T. p. 57.)

(43) The refrigerator on the 735 and the washer and dryer on the 733 side originally belonged to Mrs. Lorie Boezi prior to her marriage to Richard Boezi. (N.T. p. 57.)

(44) The furnishings in the children's bedrooms on the 733 side originally belonged to Gaetana Boezi and were used by her children when they were small. (N.T. p. 57.)

(45) When Richard and Lorie Boezi married, Lorie had three children from a prior marriage. Her twins were age 3 and her son was 7 when the couple married. (N.T. p. 58.)

(46) Richard and Lorie Boezi had a daughter together. She was 8 years old at the time of the accident. (N.T. p. 58.)

(47) The property shares one common backyard. (N.T. p. 59.)

(48) All family members have free and open access to the entire residence deck, backyard, front yard and garage. (N.T. p. 59.) Though conducted as a side-by-side double home, these plaintiffs have been treating the home as a single family residence since well before the subject motor vehicle accident.

(49) Richard Boezi took responsibility for the maintenance of all the vehicles in the household, including his mother's. (N.T. p. 68.)

(50) Ms. Gaetana Boezi maintained an automobile insurance policy with Erie Insurance Group policy no. ***-*******. (Defendant's exhibit "1".)

(51) The policy provides underinsured motorist (UIM) protection coverage for any relative. The policy defines "relative" as "a resident of your household who is a person related to you by blood, marriage or adoption." The policy defines a "resident" as a "person who physically lives with you in your household." (Defendant's exhibit "1".)

(52) The petitioners, Richard Boezi and Lorie Boezi, are competent adult individuals.

(53) The policyholder, Gaetana Boezi, is likewise a competent adult individual.

(54) The respondent, Erie Insurance Exchange, is a business entity duly authorized in the Commonwealth of Pennsylvania to issue insurance policies and, in par-

ticular, insurance policies under the Pennsylvania Motor Vehicle Financial Responsibility Law.

(55) At all times relevant hereto, the petitioner, Gaetana Boezi, maintained a policy of insurance with the Erie Insurance Exchange.

(56) The applicable policy period for the automobile insurance policy, policy no. *********** is November 28, 2001 to November 28, 2002.

(57) At all times relevant hereto, this automobile insurance policy provided insurance coverage to the named insured, Gaetana Boezi, for her automobile, a 2000 Chrysler Cirrus, vehicle identification no. ****************. A copy of the policy declaration sheet is attached as exhibit "A" to respondent's proposed findings of fact.

(58) At all times relevant hereto, the aforementioned insurance policy provided for underinsured motorist coverage in the amount of $100,000 per person/$300,000 per accident without stacking being considered.

(59) The petitioners, Richard Boezi and Lorie Boezi, have submitted an underinsured motorist claim under the insurance policy of Gaetana Boezi.

(60) The petitioners, Richard Boezi and Lorie Boezi, are asserting that Richard Boezi was injured in an automobile accident which occurred on July 25, 2002, within the relevant policy coverage period.

(61) Under the terms of the Uninsured/Underinsured Motorist Coverage endorsement, Endorsement AFPU01(ED.4-94), the policy identifies the individuals covered by the insurance policy. The insurance policy states under the section identified as OTHERS WE PROTECT the individuals who are insured. In subsection 1,

OTHERS WE PROTECT, the term "relative" is identified as a protected person.

(62) The term "relative" is defined under the terms of the main insurance policy. The policy sets forth that a relative is "relative means a resident of your household who is:

"(1) A person related to you by blood, marriage or adoption or

"(2) A ward or any other person under 21 years old in your care."

(63) The term resident is also defined under the terms of the policy. The term resident is defined as follows:

" 'Resident' means a person who physically lives with you in your household. Your unmarried, unemancipated children under 24 years of age attending school full-time living away from home will be considered residents of your household."

(64) The respondent, Erie Insurance Group/Erie Insurance Exchange specifically denied in its answer to motion for appointment of defense neutral arbitrators that the petitioner, Richard Boezi, was a resident of the household of Gaetana Boezi.

(65) It is acknowledged that Richard Boezi is the son of Gaetana Boezi and therefore, related by blood as defined under the terms of the policy. However, the Erie Insurance Exchange has denied that the petitioner, Richard Boezi, lived in the same household as the policyholder, Gaetana Boezi.

(66) In March of 1992, Richard Boezi and Gaetana Boezi purchased a property located at 733-735 Taylor Avenue in Scranton, Pennsylvania. (Hearing transcript p. 6, l. 12.)

(67) At the time Richard Boezi and Gaetana Boezi purchased the premises located at 733-735 Taylor Avenue, it consisted of two distinct housing units. (Hearing transcript p. 6, l. 16.)

(68) At the time Richard Boezi and Gaetana Boezi purchased this premises, they intended to maintain two separate units in this building. (Hearing transcript p. 6, l. 16.)

(69) Richard Boezi and Gaetana Boezi intended to renovate the 733 side of the building and maintain it as a distinct and separate unit. (Hearing transcript p. 7, ll. 19, 23.)

(70) At all times relevant hereto, the 733 residential unit and the 735 residential unit have maintained separate utilities. (Hearing transcript p. 8, l. 15.)

(71) At all times relevant to this proceeding, the parties have wanted to maintain the 733 residential unit and the 735 residential unit as two separate units in terms of its original construction configuration, but with modifications as their family circumstances changed. (Hearing transcript p. 59, ll. 1-3.)

(72) In 1993, Lorie Boezi married Richard Boezi. At that time they moved into the 733 residential unit. (Hearing transcript p. 9, ll. 10-17.)

(73) A door on the second floor was installed in the premises during renovation. This space had previously been left open. (Hearing transcript p. 11, ll. 9-12.)

(74) The 733 residential unit has one bathroom. The 735 residential unit has one bathroom. They would seem to be shared as needed. (Hearing transcript p. 12, l. 25; p. 13, l. 1.)

(75) Access to the attic from the 735 side of the unit was blocked by construction directed or conducted by Richard Boezi. (Hearing transcript p. 13, ll. 20-25.)

(76) Each residential unit in the structure has a separate kitchen which is fully equipped. (Hearing transcript p. 13, ll. 20-24.)

(77) The residential units have separate living rooms. (Hearing transcript p. 14, ll. 1-2, exhibit 8.)

(78) Richard Boezi and Gaetana Boezi share equally the mortgage bill. (Hearing transcript pp. 18-19.)

(79) Richard Boezi and Gaetana Boezi share equally the payment of real estate taxes. (Hearing transcript pp. 18-19.)

(80) Richard Boezi and Gaetana Boezi share equally the insurance expenses on these two residential units. (Hearing transcript pp. 18-19.)

(81) Gaetana Boezi has a separate gas bill and has a separate gas meter for the 735 residential unit. (Hearing transcript p. 31, ll. 10-14.)

(82) Gaetana Boezi has a separate utility meter for water for the 735 residential unit, which she alone pays for the water bill. (Hearing transcript p. 31, ll. 20-25.)

(83) The 735 residential unit inhabited by Gaetana Boezi has a separate sewer meter and receives a separate sewer bill which she pays. (Hearing transcript p. 32, ll. 4-8.)

(84) Gaetana Boezi has a separate telephone for the 735 residential unit. (Hearing transcript p. 31, ll. 15-19.)

(85) Gaetana Boezi maintains her driver's license and vehicle registration at an address designated as 735 Taylor Avenue in Scranton. (Hearing transcript p. 23, ll. 17-19.)

(86) Gaetana Boezi maintains a separate living room in the 735 residential unit. She purchased the furniture in this unit and exclusively chose the manner in which the room would be decorated. (Hearing transcript p. 25, ll. 15-20; p. 26, ll. 8-10.)

(87) Gaetana Boezi maintains a residence for federal, state and local income tax purposes which is not 733 Taylor Avenue in Scranton. (Hearing transcript pp. 36-38.)

(88) Gaetana Boezi, at all times relevant hereto, has maintained her bedroom and slept exclusively in the 735 residential unit. (Hearing transcript p. 43, ll. 7-14.)

(89) Richard Boezi has maintained a separate bedroom with his wife, Lorie Boezi, in the 733 residential unit. (Hearing transcript p. 44, ll. 2-6.)

(90) Gaetana Boezi maintains a separate checking account to pay her personal bills including charge cards and other personal expenses. This would be the case even with children living at home or away at school, and is an observation of dubious value in determining residential status or where a person "physically lives." (Hearing transcript p. 41, ll. 7-16.)

(91) Gaetana Boezi completed a policy information sheet. A copy of this sheet is attached to respondent's proposed findings of fact as exhibit "B." This sheet was personally completed by Gaetana Boezi in 1997. (Hearing transcript p. 33, l. 11 through p. 34, l. 8.)

(92) The policy information sheet indicated that there was only one driver, Gaetana Boezi, in the household. (Deposition transcript pp. 33-34.)

(93) Gaetana Boezi indicated on this form that there was only one vehicle in the household. (Hearing transcript p. 35, ll. 20-25.)

(94) The policy information sheet completed by Gaetana Boezi, with the assistance of her insurance agent, indicated there was only one resident in the household which was herself. (Hearing transcript pp. 34-35.)

(95) At all times relevant hereto, the structure located at 733-735 Taylor Avenue contained two residential units.

(96) Gaetana Boezi ate her breakfast meal in the 735 residential unit kitchen each morning.

(97) Gaetana Boezi prepared one meal a week which was prepared on her side of the structure on Sundays, although she took many other meals in the 733 residential kitchen during a typical week.

(98) Gaetana Boezi ate dinner meals with Richard Boezi and certain of his family members in the 733 residential unit during weekdays. These meals were prepared by Lorie Boezi in the kitchen in the 733 residential unit.

(99) At all times relevant hereto, the premises at 733-735 Taylor Avenue maintained two separate and distinct residential units but only from a construction configuration standpoint. In use, the two residences blended into one.

(100) Richard Boezi completed a plaintiff's address form on a civil cover sheet filed in the Court of Common Pleas of Lackawanna County. This civil cover sheet indicates that the plaintiff's address is 733 Taylor Avenue, Scranton, Pennsylvania.

(101) Richard Boezi identified his residence as 733 Taylor Avenue for his driver's license and registration. (Hearing transcript pp. 2-9.)

(102) At all times relevant hereto, Richard Boezi had a separate telephone listing for 733 Taylor Avenue. (Hearing transcript p. 65, ll. 10-13)

(103) At all times relevant hereto, Richard Boezi identified to his employer, the City of Scranton, that he resided at 733 Taylor Avenue in Scranton. (Hearing transcript p. 67, ll. 3-12.)

(104) At all times relevant hereto, Richard Boezi prepared state, federal and local income tax documents which indicated his address was 733 Taylor Avenue. (Hearing transcript p. 64, ll. 1-6.)

## IV. DISCUSSION OF APPLICABLE LAW

Construction of the term "resident" in an insurance policy is a matter of law. *Nationwide Mutual Insurance Co. v. Budd-Baldwin,* 947 F.2d 1098, 1100 (3d Cir. 1991).

In addition, the question of residency is not an issue of intention, but one of physical fact and presence. *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.,* 376 Pa. Super. 109, 545 A.2d 343 (1988). See also, *Schultz v. Encompass Insurance,* 204 WL 2075114 (E.D. Pa. 2004).

We agree with counsel that there are no cases interpreting the exact language used in the instant Erie policy, namely, where resident is defined as where a person "physically lives." However, as indicated, several cases discussing the same issue provide guidance.

The term "physically" is defined as having material existence or relating to material things. Webster's Collegiate Dictionary 935 (11th edition 2003).

"A person lives where they 'occupy a home.' Webster's Collegiate Dictionary 974 (7th edition 1973). [T]o regularly live somewhere means to occupy that particular home at fixed intervals. When we combine the dic-

tionary definition with the facts of everyday life, it is clear that to occupy a home means to be able to call that place one's own, claim it as a place where one has a right to be. The word 'home' itself connotes a place where one belongs and can always go with certainty that [s]he will be taken in. It connotes not only a physical place, *i.e.,* the place where one eats meals, sleeps, socializes and generally spends time when not 'otherwise engaged with the activities of life,' but *a sense of belonging.*" *Nationwide Mutual Insurance Co. v. Buddy-Baldwin,* 947 F.2d 1098, 1100 (3d Cir. 1991). (emphasis added)

Moreover, in the instant policy, a "resident" is defined as "a person who physically lives with the insured in the insured's household, and a household is defined as a family living together." See *Donegal Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 377 Pa. Super. 171, 179, 546 A.2d 1212, 1215-16 (1988), citing Black's Law Dictionary, 666 (5th edition 1979). The term "household" is generally synonymous with family for insurance purposes, and includes those who dwell together as a family under the same roof. *Id.*

## V. ANALYSIS

When you look at the totality of the circumstances and apply the principles cited above, especially the physical makeup of the living arrangement creating a "sense of belonging," (see *Nationwide Mutual Insurance Company v. Budd-Baldwin, supra*), we agree with the petitioners that Richard Boezi and Gaetana Boezi were residents of the same household. Together, Richard and Gaetana Boezi purchased the structure referred to as 733-735 Taylor Avenue in 1992. As it existed, the structure was a

side-by-side double home. At the time of purchase, they intended to live together in the 735 side which was in good condition. Mr. Boezi proceeded with renovation of the 733 side with the intent of using it for rental income. In the interim, Mr. Boezi married in 1993. After the marriage, his wife, Lorie Boezi and her three children, ages 7 and 3 came to live with Richard and his mother at the residence.

The structure consists of four stories on each side separated by a common wall. Access exists on three floors to allow the family to use the structure as a single home. A doorway allowing free access exists in the basement and another on the second floor. The basement doorway pre-existed the Boezi's possession of the home, however, Mr. Boezi had to clear the area to permit use of the doorway. The family used the doorway in the basement frequently. At the time the Boezis moved into the residence, a deck extended off of the first floor kitchen on the 735 side. After moving in, Mr. Boezi constructed a deck off of the 733 side and connected it to the deck existing on the 735 side, thereby allowing access on the first floor between the two sides of the home via the deck. Mr. Boezi created a doorway between the two sides on the second floor to allow the family easy access to the bedrooms, offices and two bathrooms at that level. Effectively, 733 and 735 are physically connected on three of the four levels, basement, first floor and second floor. In the attic or fourth floor where there is no connection, there also is no living space, but only storage space.

Gaetana Boezi and Richard Boezi testified that both sides of the home were used by the family as a single home and that family members used both sides of the residence for storage of personal belongings, exercise, play, recreation, sleeping, eating and bathroom facilities.

The contents of the home at the time of the subject accident belonged primarily to Gaetana Boezi and Mrs. Lorie Boezi.

We conclude that testimony clearly established that the seven people residing in the residence in fact dwelled as a single family living together. Further, they altered the home to achieve that purpose. The family had meals together on a nightly basis which were prepared by Lorie Boezi on weeknights and by Gaetana Boezi on Sunday evenings. All adults shared equally in child care responsibilities. Richard Boezi acted as the family head in that he was solely responsible for decisions concerning maintenance, repair and upkeep of the home. Lorie Boezi and Gaetana Boezi shared house cleaning responsibilities, each performing work in all areas of the residence. Additionally, both women were responsible for the family's laundry. Many evenings were spent together viewing television or simply spending time together as a family. There was no restriction on access by any family members to any portion of the home. Each member of the family, including Gaetana and Richard Boezi, has a sense of belonging in the entire home, and with each other. Each thought of the entire home as a place where they had a right to be, and each was certain that they would be taken in.

We are mindful of the fact that Richard and Gaetana Boezi maintained separate mailing addresses and separate utilities. However, Mr. Boezi testified that the utilities were not combined to single meters because it was cost prohibitive and would impede the future sale of the premises as a double, two-family building. This is most logical and believable. Further, while the majority of Gaetana Boezi's mail came to 733 Taylor Avenue she

also received mail addressed to 735 Taylor Avenue or 733-735 Taylor Avenue as evidenced by the tax bill, joint bank account statements and insurance documents referred to at the hearing in this matter and identified as plaintiffs' exhibits 2 through 5. Further, Mr. Boezi testified that he occasionally paid a utility bill for the 735 side in addition to the 733 bill.

We agree that the testimony clearly establishes that, once Mr. Boezi married, he, his wife and mother decided to live as a family in the residence. We are further mindful that the original construction of the property was intended to house two separate families. The only alteration of the structure that the Boezis did not make to combine the structure into a single unit was to demolish the common wall because it would be structurally impossible as it is weight bearing. Similarly, they did not purchase a traditional single family property because they were already in possession of a home large enough to accommodate all seven family members. Based on a totality of the physical circumstances, the credibility of the witnesses, the credible evidence and the guidelines of the legal authorities set forth above, we conclude that Richard Boezi was a resident relative of Gaetana Boezi's household on July 25, 2002, and therefore is entitled to underinsured motorist coverage under Erie Insurance Group policy no. \*\*\*-\*\*\*\*\*\*\*.

An appropriate order will follow.

## ORDER

And now to wit, February 10, 2005, after due consideration of the testimony elicited at the hearing of September 28, 2004, the able written submissions of coun-

sel, and in accordance with the foregoing memorandum, it is hereby ordered and decreed that:

(1) Richard Boezi was a resident relative of Gaetana Boezi's household on July 25, 2002, and, therefore, is entitled to underinsured motorist coverage under Erie Insurance Group policy no. \*\*\*-\*\*\*\*\*\*\*.

(2) The parties are directed to conduct an underinsured motorist arbitration hearing in this matter.

(3) The court directs respondent to submit its arbitrator within 10 days of this order, time being of the essence. If the respondent arbitrator is not chosen or respondent arbitrator cannot agree on a neutral, the court will appoint all necessary persons to comply with this order.

(4) The parties are to proceed in a manner consistent with the foregoing.