# Henschke et al. *v.* Moore et al., Appellants (No. 1).

*Contracts—Restraint of trade — General restraint — Partial restraint—Validity—Consideration—Equity—Injunction—Refusal.*

1. The law of Pennsylvania observes the distinction between contracts in general restraint of trade and those in partial restraint of trade. A contract in general restraint of trade covers the entire country, while a contract in partial restraint of trade covers only a small area. While contracts in general restraint of trade are void, contracts in partial restraint of trade will be sustained if reasonable.

2. A contract which attempts to restrain a party from engaging in a business which has previously been open to him in common with the general public is unreasonable and such restriction will not be enforced by the courts.

3. A contract in restraint of trade, unlimited as to time, must be regarded as extending the restraint further than is necessary for the reasonable protection of the covenantee and is void.

4. A contract granted the sole and exclusive right to manufacture and use a patented apparatus for feeding horse hair from a bundle to a wrapping device. The contract further provided that in case the license were surrendered "the licensee will not thereafter, either directly or indirectly, engage in the business of manufacturing or selling the same or any competing material in the United States." Upon the surrender of the license, the former licensee engaged in the business of manufacturing and selling horse hair yarn. The

HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1). 197

1917.]                    Syllabus—Arguments.

former licensor brought a bill in equity to enjoin defendants from violating the provisions of the contract. *Held,* that the contract was unreasonable restraint of trade in that it attempted to restrain defendant from engaging in a business throughout the United States, which prior thereto, he had a right to engage in, and the restraint was in other respects larger than necessary for the protection of the licensor, and the excessive restraint was without consideration.

Argued Jan. 23, 1917.   Appeal, No. 297, Jan. T., 1916, by defendants, from decree of C. P. No. 4, Philadelphia Co., March T., 1915, No. 3470, awarding an injunction, in case of Bruno Henschke and Karl Ersel, copartners, doing business under the name of Haensel and Company, v. Edgar B. Moore, H. R. Sack, The Penn Worsted Company, and Edgar B. Moore, Henry Frankenberg, Edward A. Morgan, Jr., and Louis F. Singleton, copartners, doing business under the name of E. B. Moore and Company.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Reversed.

Bill in equity for an injunction.   Before FINLETTER, J. The opinion of the Supreme Court states the facts.

The court on final hearing awarded an injunction as prayed for.   Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*John G. Johnson,* with him *Charles H. Edmunds* and *M. H. Regensburger,* for appellants.—The covenant providing that the licensee will not thereafter either directly or indirectly engage in the business of manufacturing or selling the same or any competing material in the United States is not enforcible in equity and is a covenant in restraint of trade and in violation of the Sherman Act: United States v. Standard Sanitary Manufacturing Co. et al., 191 Fed. Repr. 172; Monongahela River Consolidated Coal & Coke Co. v. Jutte, 210 Pa. 288; Keeler v. Taylor, 53 Pa. 467; Taylor v. Saurman, 110 Pa. 3; Stambaugh v. Grider, 26 Lanc. L. Rev. 49.

198 HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1).

Arguments—Opinion of the Court.        [257 Pa.

*Henry J. Scott,* for appellees.—The covenant in the seventh paragraph of the agreement is enforcible in equity and is not a contract in restrain of trade: Harrison v. Glucose Sugar Refining Co., 116 Fed. Repr. 304; Gibbs v. Consolidated Gas Co. of Balto., 130 U. S. 396; Barrows v. McMurtry Mfg. Co., 54 Colo. 432 (131 Pac. Repr. 430) ; N. Y. Bank Note Co. v. Kidder Press Mfg. Co., 192 Mass. 391 (78 N. E. Repr. 463) ; N. Y. Bank Note Co. v. Hamilton Bank Note & Printing Co., 180 N. Y. 280 (73 N. E. Repr. 48) ; Moenich v. Fenestre, 61 L. J. R. Ch. D. 737; Badische Anilin und Soda Fabrik v. Schott, L. R. Ch. D. (1892), 3 Ch. 447; Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co., L. R. (1894) App. Cas. 535; Diamond Match Co. v. Roeber, 106 N. Y. 473 (13 N. E. Repr. 419) ; U. S. Cordage Co. v. William Wall's Sons Rope Co., 70 N. Y. St. Repr. 602; Wood v. Whitehead Bros. Co., 165 N. Y. 545 (59 N. E. Repr. 357) ; Angelica Jacket Co. v. Angelica, 121 Mo. App. 226 (98 S. W. Repr. 805) ; Artistic Porcelain Co. v. Boch, 74 Atl. Repr. 680; Monongahela River Consolidated Coal & Coke Co. v. Jutte, 210 Pa. 288; Southworth v. Davison, 106 Minn. 119 (118 N. W. Repr. 363) ; Smith v. Webb, 58 So. Repr. 913; Smith v. Brown, 164 Mass. 584 (42 N. E. Repr. 101) ; Marshall Engine Co. v. New Marshall Engine Co., 203 Mass. 410 (89 N. E. Repr. 548).

OPINION BY MR. JUSTICE POTTER, March 19, 1917:

The form of the bill filed by complainants in this case indicates that they sought to restrain the infringement of certain letters patent of the United States, granted to Oswald Haensel for an improvement in apparatus for feeding horse hair from a bundle to a wrapping device. If that were in fact the issue involved, we would be without jurisdiction to determine it, as the infringement of a patent is a question exclusively for consideration by the Federal Courts. The real controversy here turned, however, upon the force of a contract entered into concern-

ing the use to be made of certain machines embodying the said invention, and no rights are involved except such as arise out of the contract.

It appears that on February 21, 1913, Haensel & Company, the plaintiffs, entered into a written contract with the defendant, Edgar B. Moore, "acting for himself and his undisclosed associates," whereby they granted to the said defendant, in consideration of his agreement to pay certain royalties, the sole and exclusive right to manufacture and use "an apparatus for feeding horse hair from a bundle to a wrapping device," which was protected by letters patent of the United States owned by plaintiffs. Provision was made for the cancellation or surrender of the license under certain circumstances, with a stipulation that, in the event of cancellation or surrender, "the licensee will not thereafter, either directly or indirectly, engage in the business of manufacturing or selling the same or any competing material in the United States." This statement is not clear. The license was for the use of a machine, and the language would naturally imply an engagement not to manufacture or sell any such machines, but it is conceded that what was intended was an engagement not to manufacture or sell horse hair yarn or thread similar to the product of the machine, or which would compete therewith. As thus understood, we have then a contract for a license to manufacture and use a machine, with a provision that, in case of surrender of the license, the licensee shall be prohibited from making or selling, not the machines which were protected by the patent, but any horse hair yarn which would compete with the product of the machine. The court below held that complainants were entitled to the relief they sought. Exceptions were dismissed, and a final decree entered, by which the defendants were enjoined "until the 7th day of March, A. D. 1928 [the expiration of the patent] from making or selling, directly or indirectly, endless horse hair yarn or cloth made therefrom, similar to that under the patent

200 HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1).

Opinion of the Court.                    [257 Pa.

of the complainants, as set forth in the bill of complainants filed in this cause, and the manufacture and sale of any competing endless hair yarn and cloth made therefrom." An accounting for profits arising out of the manufacture and sale of hair yarn or cloth made therefrom since September 30, 1914, was also ordered. Defendants have appealed, and their counsel contend that the covenant by which the licensee was bound, in the event of the surrender of the license, not to manufacture or sell anywhere in the United States at any time, material similar to that which was the product of the machine described in the patent, was a contract in restraint of trade, which a court of equity will not enforce. In a late textbook discussion of the subject, 6 Ruling Case Law (1915) 785, it is said: "The doctrine relating to contracts in restraint of trade appears to have undergone distinctive stages of transformation or development. According to the early common law of England, an agreement in restraint of a man's right to exercise his trade or calling was void as against public policy........Although the courts continued to treat contracts in general or total restraint of trade as void, they began to enforce contracts in partial restraint of trade provided such contracts were not unreasonable. The classification of contracts into those which are in general restraint of trade and those which are in partial restraint of trade, seems to have been made for the purpose of distinguishing between restrictive agreements covering the entire country, and restrictive agreements covering a small area. This distinction is still adhered to in some jurisdictions. But, as will be seen, many of the courts have, in view of changed conditions, abandoned the rule that contracts in general restraint of trade are necessarily void. In its place they have substituted the more flexible rule that contracts in unreasonable restraint of trade are void, while contracts which impose a reasonable restraint upon trade are valid. The tendency of modern decisions is to adopt this rule as the one governing the subject."

HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1). 201

1917.]                    Opinion of the Court.

Our Pennsylvania cases follow the distinction between contracts in general restraint of trade, and those in partial restraint. In the former case we have held the restriction to be void, and in the latter that it might be sustained if reasonable. The decision in Monongahela River Consolidated Coal & Coke Co. v. Jutte, 210 Pa. 288, was cited by the court below, and is relied upon by both parties to this appeal, as defining the present state of the law upon the subject. It was there said (p. 302) : "When a contract is presented which in some degree restrains trade, we do not at once decide that it is void as against public policy, but we go further and inquire, is it limited as to space or time, and is it reasonable in its nature?" Mr. Justice DEAN then called attention to the facts that the contract there under consideration was limited as to time, ten years; limited as to space, the immediate territory adjacent to three navigable rivers and their tributaries, and related to the sale of the goodwill of a business. He expressly gave as one reason for enforcing the contract that "the time was not an indefinite period as in some of the cases."

In the case at bar the complainants do not expressly aver a breach of the covenant contained in the seventh paragraph of the contract, in which the licensee agrees that in the event of the surrender of the license, he will not "engage in the business of selling the same or any competing material in the United States." The only sentence in the bill that can be construed to refer to that covenant, is the averment that "respondents are continuing to take orders for and are manufacturing and have delivered large quantities of cloth containing said hair yarn of the exact appearance as that made and sold heretofore by respondents under your orator's patent." Yet the court below, without reference to the prayers of the bill, that infringement of plaintiffs' patent be restrained, and for an account and award of damages for such infringement, has considered the bill as if it had been filed to enforce the contract not to manufacture and

202 HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1).

Opinion of the Court.                    [257 Pa.

sell material similar to that which was to be produced on
the machine described in the patent. The licensee was en-
tirely within his rights in surrendering the license. The
testimony shows that the machines described in the com-
plainants' patent would not produce hair yarn which was
satisfactory to defendants. That being the case, was the
restriction reasonable which prevented the licensee from
making hair yarn upon some other machine, after surren-
dering his license under complainants' patent? We are
clearly of the opinion that it was not. Hair yarn, and
hair cloth made therefrom, were at the time, old and
well-known products long in public use. The license
granted by complainants was merely for the use of a
machine, and it did not apply at all to the hair yarn
which was the product of the machine. The license cov-
ered only one method of making hair yarn. Other meth-
ods which did not infringe the claims of the patent, were
open to the public. For the use which was made of the
machine, complainants were compensated by the royalty.
When the license was surrendered, complainants re-
ceived everything to which they were entitled. They had
their patent then in their own hands and could use it
themselves, or license others to use it. There was noth-
ing to justify them in seeking to restrain defendants
from engaging in the business of manufacturing hair
yarn by the use of any machine which did not infringe
their patent. This transaction is not properly to be com-
pared with the sale of a business in which there is an
agreement, upon the part of the seller, not to compete
with the purchaser for a limited term. To do so in such
a case, would be a breach of faith, as it would depreciate
the value of the property or business sold. A case anal-
ogous to the present one would be that of the sale of a
business in consideration of the payment of a yearly sum
as compensation, coupled with a provision that in case
the purchaser exercised his right to discontinue the busi-
ness, he should never be allowed to engage in the same
or a similar business at any time or any place. Such a

HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1). 203

1917.]                Opinion of the Court.

contract in restraint of trade would be clearly unreasonable. So, in the present case, is the attempt to restrain defendants from doing something which they were at perfect liberty to do before the granting of the license, that is manufacture hair yarn by the use of a machine which does not infringe plaintiffs' patent. Any restriction which prevents them from doing the same thing after the surrender of the license which they in common with the public were at liberty to do before taking a license for the use of plaintiffs' machine, is palpably unreasonable. Such a requirement is not at all necessary for the proper protection of the rights of the plaintiffs, and it is oppressive to defendants.

The restriction here is also unreasonable in that it is unlimited as to time. The court below endeavored to overcome this fault by enjoining defendants only during the balance of the term of plaintiffs' patent. But here again we must repeat that the patent, which was for a machine, did not apply to the subject-matter of the restriction, which was the manufacture and sale of hair yarn. The only thing to which plaintiffs had a right to protection, was the subject-matter of their patent, and when the restriction went beyond that, and attempted to restrain defendants from engaging in the manufacture and sale of hair cloth, a business which had been previously open to them in common with the general public, the restraint was unreasonable. In Oregon Steam Nav. Co. v. Winsor, 87 U. S. 64, Mr. Justice BRADLEY said: "It is a well-settled rule of law that an agreement in general restraint of trade is illegal and void; but an agreement which operates merely in partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it. In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the necessary protection of the party with whom the contract is made. A contract, even on good consideration, not to use a trade anywhere in England, is held void in that country, as being too gen-

204 HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1).

Opinion of the Court.                    [257 Pa.

eral a restraint of trade; but a contract not to use a trade at a particular place, if it be founded on a good consideration and be made for a .proper and useful purpose, is valid. Of course, a contract not to exercise a trade generally would be obnoxious to the rule, and would be void."

In Union Strawboard Company v. Bonfield, 193 Ill. 420, the contract was in connection with the sale of a business, and a reasonable restriction was justified, but it was there said: "The courts will not enforce any contract which excludes a party generally from following any lawful trade or business beneficial to the community and to him."

In Lanzit v. J. W. Sefton Mfg. Co., 184 Ill. 326, which also involved the sale of a business, it was held that a contract in restraint of trade throughout the United States was unreasonable and void, and also that it could not be divided so as to apply to a single state only, as such a contract would also be void.

In the case at bar, the contract in restraint of trade being unlimited as to time, and as to space extending over the entire country, must be regarded as extending the restraint further than is necessary for the reasonable protection of the covenantee. Reference to the nature and subject-matter of the restriction makes its unreasonableness more clearly apparent. As we have already indicated, payment of the royalty was full compensation for the use of the patent, and as the plaintiffs contributed nothing but the patent, there was no consideration whatever to support that portion of the agreement which bound the licensee after the surrender of the license, to refrain from the manufacture, by methods which did not infringe plaintiffs' patent, of an article of commerce in common use. Such a restriction upon the rights of the licensee was, in its very nature, unreasonable and void.

Nor is there any merit in the suggestion that plaintiffs were entitled to relief in order to protect trade secrets. The contract had no relation in any way to trade secrets.

HENSCHKE et al. *v.* MOORE et al., Appel. (No. 1). 205

1917.]          ·          Opinion of the Court.

It related solely to the use of a patented machine, the specifications of which are a matter of public knowledge and record. To secure a valid patent, the law requires the specification to be plain and clear, and to describe the invention in such a manner as to enable the public to practice it from the specification alone. There was, therefore, no room in this case for the addition of any trade secrets to make the alleged invention workable.

Holding, as we do, that the contract in question is an illegal restraint of trade, and cannot be enforced in a court of equity, the question whether the relief sought should be confined to the single defendant, Edgar B. Moore, need not be considered.

Of the forty-four assignments of error, all except the last one, are to the dismissal of various exceptions filed by defendants to the findings of fact and conclusions of law, of the trial judge. Without disposing specifically of these assignments, it is sufficient to say that the forty-fourth, which is to the final decree, is sustained, and the decree of the court below is reversed, at the cost of the appellees.

----

# Henschke et al. *v.* Moore et al., Appellants (No. 2).

