588 A.2d 538

Albert BILEC, Robert Brevko, Hugh Conlon, William A. Coulter, Ralph Drexler, Andrew J. Hertneky, Jr., Joseph Jacobson, Jr., Edward Kriscunas, Charles F. Lange, Albert J. Mack, George H. Miller, William A. Onderick, Howard Perry, Albert E. Reid, Donald W. Robinson, Edward P. Schneider, Robert J. Simcic, Elmer J. Wess and Audrey M. Brednick and Sylvia A. Sunanin, Personal Representatives, Appellants,

v.

AUBURN & ASSOCIATES, INC. PENSION TRUST, Robert Avondo, Wesley Deicas, Provident Mutual Life Insurance Co., and Fuhrer's, Inc.,

v.

Anthony J. MOSSO.

Superior Court of Pennsylvania.

Argued March 28, 1990.

Filed March 22, 1991.

Petition for Allowance of Appeal Denied Sept. 4, 1991.

Joseph M. Maurizi, Pittsburgh, for appellants.

W. Walter Braham, Jr., Pittsburgh, for Provident Mut., appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

KELLY, Judge:

In this case we are called upon to determine whether the trial court properly upheld the enforcement of a non-competition pension forfeiture clause which had been placed by the appellee-employer, Auburn & Associates, Inc., into a contract it entered into with the appellee-insurer, Provident Mutual Insurance Co., for the administration of its employee pension plan against the appellants who were all former employees. We find that, the appellee-employer has failed to meet any of the criteria set forth by our Courts for the

enforcement of a non-competition covenant against the appellants. Therefore, we reverse.

The relevant facts and procedural history of this case are as follows. The appellee-employer was a company which performed drafting and engineering services for various industrial manufacturing concerns in Pennsylvania. The appellants were all draftsmen who were hired by the appellee-employer between the years of 1955 and 1961. All of the appellants worked in drafting related non-managerial capacities until the time of their termination. The appellee-employer established a company-run, in-house administered employee pension plan in 1953. In August of 1962, the appellee-employer entered into a contract with the appellee-insurer to turn over the administration of the pension plan to the appellee-insurer. This contract was entitled the "Group Deposit Administrative Policy". (GDAP) Pursuant to this contract, the appellee-insurer agreed to pay the retirement annuities of all of the appellee-employer's eligible vested employees. The contract was subsequently amended in a policy entitled "Immediate Participation Guarantee". (IPG) The non-competition clause which called for the forfeiture of the appellants' pension benefits upon notice of termination with the appellee-employer and subsequent employment with a competing firm was included in both policies. The clause, which was essentially the same in both policies, read:

Anything in the foregoing to the contrary notwithstanding, a participant shall be *entitled to no benefits hereunder if the Policyholder gives the Insurance Company written notice that the participant has terminated his employment* due to the participant's dishonesty or through any willful act in the course of his employment to the injury of the Employer or the participant's fellow employees, *or to enter the services* of a firm which competes with the employer. The determination by the Policyholder that the participant has terminated employment under such circumstances shall be conclusive for the

purposes of this policy." (Emphasis supplied in the opinion of the court below.)

Trial Court Opinion at 2, *citing* Section VIII of the GDAP, titled "Termination of Employment;" and Section XII of the IPG titled "Termination of Employment or Status as Employee."

All of the appellants left the service of the appellee-employer between the years 1969 and 1974 to work for other drafting concerns. The last appellant to work for the appellee-employer, Howard Brednick, terminated his employment on July 31, 1974. With exception of complying with the non-competition clause contained in the contract between the appellee-employer and the appellee-insurer, all of the appellants, save one, met the requirements established by the appellee-employer for participation in the pension plan.[1]

On August 31, 1975, the appellee-employer ceased doing business and terminated all of its salaried employees. Two years later, on November 15, 1977, the pension plan was terminated and the appellants were not awarded any pension annuity credits. The appellants instituted this lawsuit claiming that they were entitled to pension benefits. The trial court upheld the enforcement of the non-competition pension forfeiture clause. An appeal to this Court was quashed *sua sponte* due to the appellants' failure to file post-trial motions. After this Court's denial of appellants' motion for reconsideration, appellants filed a motion in the trial court for leave to file exceptions *nunc pro tunc*. The

1. On August 15, 1974, the non-competition clause was removed by an amendment to the IPG agreement in view of the statutory prohibitions against pension forfeitures enacted by the United States Congress in the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002 *et seq.;* however, as the removal of the non-competition pension forfeiture clause occurred after the appellants had already left the appellee-employer's service, the clause's removal has no bearing on the instant litgation.

Moreover, while ERISA, which became effective on January 1, 1976, preempts all state law and prohibits pension forfeiture for post-employment competitive activity, it has no retroactive application and thus is not pertinent to the case at bar.

trial court granted the motion. The appellees' subsequent motion for reconsideration of the order granting appellants' motion for leave to file exceptions *nunc pro tunc* was denied as was the appellants' motion for post-trial relief. This appeal followed. The appellees then filed a motion to dismiss the appeal with this Court which was denied.[2]

On appeal, the appellants have raised two issues for our consideration.

1. Whether the noncompete clause in the Immediate Participation Guarantee (IPG) Insurance Pension Plan Contract, which results in a forfeiture of vested pension benefits, is contrary to the public policy of this Commonwealth and therefore unenforceable.

2. Assuming, *arguendo*, the noncompete forfeiture clause is valid, whether the employment of appellants by existing companies which employ draftsmen and design engineers results in conduct which is inimical to the economic interests of their former employer.

(Appellants' Brief at iii).

The appellants' first contention is that the trial court erred in its determination that the instant non-competition pension forfeiture clause was not violative of the public policy of this Commonwealth. The appellants argue that as they were forced by the actions of the appellee-employer towards them to seek other employment, the appellee-employer should not be permitted to profit by its action by declaring their pensions forfeit. The appellants assert that it was inequitable to permit the appellee-employer to retain the proceeds of their pensions in light of the fact it was the appellee-employer's own decision to withdraw from competition and eventually close the business that forced the appellants to leave its employ.

---

2. When a trial court elects to hear untimely exceptions or post-trial motions and addresses the alleged error on the merits, we are bound to review the merits. *Kurtas v. Kurtas*, 521 Pa. 105, 555 A.2d 804 (1989); *Donegal Mutual Insurance Co. v. State Farm*, 377 Pa.Super. 171, 546 A.2d 1212 (1988).

While we are not in agreement with the appellants'. blanket contention that all pre-ERISA forfeiture clauses are violative of the public policy of this Commonwealth, we do find that this particular forfeiture clause violates public policy of Pennsylvania in regards to the enforcement of covenants not to compete. Our reasoning for reaching this conclusion is as follows.

The appellee-employer established an employee pension plan in 1953, which until 1962, was self-administered. All of the appellants became employees of the appellee-employer during this time period. One of the fringe benefits of the appellants' compensation package was their eventual participation in the company administered pension trust. At the time the appellants began their careers, there was no record that their pension rights were contingent on their adherence to a non-competition clause.

In 1962, the appellee-employer entered into a contract with the appellee-insurer to administer the pension trust and provide retirement annuities to its employees. One of the clauses in this insurance contract between the parties provided that a participant could be deemed ineligible and receive no benefits under the plan if the employee terminated his employment to enter into the service of a firm which competed with the appellee-employer. The clause also provided that the appellee-employer's determination that a participant was ineligible under the non-competition clause was conclusive for the purposes of the policy. The policy was amended in 1972 to provide that the appellee-employer was to give the appellee-insurer written notice of a participant's forfeiture of rights under the policy.

Accordingly, we find the existence of two contracts. The first contract was an employment contract between the appellee-employer and all of the appellants. The provision of this employment contract included all of the appellants in the pension plan upon their attainment of the requisite age and the appropriate length of service without being subject to a non-competition clause in exchange for their services. The second contract was between the appellee-employer and

appellee-insurer for the administration and pay out of the retirement pensions to all eligible participants. This second contract contained the restrictive non-competition covenant. Its implementation and application to the appellants, hired by the appellee-employer, before its effective date of August 15, 1962, presented a change in the conditions of appellants' employment.

It is well settled that in Pennsylvania pensions are viewed as contractual rights rather than gratuities. *Lowe v. Jones*, 414 Pa. 466, 200 A.2d 880 (1964); *Kline v. Morrison*, 353 Pa. 79, 44 A.2d 267 (1945); *Levitt v. Billy Penn Corp.*, 219 Pa.Super. 499, 283 A.2d 873 (1971). "A wage-earner's pension is not something which miraculously falls to him as manna from the sky. It is the fruit of the tree which he has planted, which he has nurtured with his continuous loyal service and watered with the sweat of his years of dedicated work." *Lowe v. Jones, supra,* 414 Pa. at 469. Employers do not have the right to deprive former employees of their pension benefits without justification. *Levitt v. Billy Penn Corp, supra.*

Instantly, the appellee-employer has sought to deprive the appellants of the right to participate in the pension plan through the use of a restrictive non-competition covenant. This clause was inserted by the appellee-employer into a contract it entered into with the appellee-insurer for the administration of the pension trust and then applied this clause to all of the appellants.

The standard by which the validity of a restrictive covenant in an employment contact is judged in Pennsylvania is set forth in *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207 (1976). These three requirements are: (1) the covenant must relate to a contract for employment; (2) the covenant must be supported by adequate consideration; (3) the application of the covenant must be reasonably limited in both time and territory. *Piercing Pagoda, Inc. v. Hoffner, supra,* 465 Pa. 507, 351 A.2d at 210.

■ In order to apply these requirements to the facts instantly, we must first examine whether the non-competition clause relates to a contract for employment. When the appellants began their careers with the appellee-employer, the pension plan was administered by the appellee-employer and there is no record that the appellants' eligibility to participate in the pension plan was subject to a non-competition clause. The non-competition clause makes its first appearance in 1962 when the appellee-employer contracted with the appellee-insurer to turn the administration of the pension trust over to the appellee-insurer. The restrictive covenant was not part of the contract between the appellants and the appellee-employer; rather, it was part of the appellee-employer's contract with the appellee-insurer. Thus, the appellee-employer has not met the requirement that the restrictive covenant must be related to a contract for employment.

■ However, an employer may validly insert a non-competition clause into a pre-existing employment contract if the amendment meets the following standard. Where a restrictive covenant is executed after the commencement of employment, it will not be enforced unless the employee restricting himself from competing with the employer received a corresponding benefit for the change in status. *Maintenance Specialities Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974); *Wainright's Travel Service v. Schmolk*, 347 Pa.Super. 199, 500 A.2d 476 (1985).

When the appellee-employer inserted the non-competition clause into the agreement with the appellee-insurer, the appellee-employer's actions presented a change in employment contracts of the appellants hired before the pension trust agreement with the appellee-insurer went into effect. However, the record does not reflect that the appellee-employer granted its employees any additional consideration in exchange for the imposition of the non-competition clause. Thus, we find that the appellee-employer did not meet the requirements to amend a pre-existing employment contract to include a non-competition clause. *See Mainte-*

*nance Specialities v. Gottus, supra; Wainright's Travel Service v. Schmolk, supra.*

Next, we will examine the final requirement for the enforcement of a restrictive covenant which holds that a covenant not to compete must be reasonably limited in both time and territory. *Piercing Pagoda Inc. v. Hoffner, supra.* In order to determine whether the appellee-employer has met this requirement, it must be determined whether the non-competition covenant imposes restrictions broader than necessary to protect the employer. *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 594–95, 351 A.2d 250, 254 (1976); *Quaker City Eng. Rebuilders v. Toscano,* 369 Pa.Super. 573, 579, 535 A.2d 1083, 1089 (1987). We are mindful that our Supreme Court has held that a non-competition agreement which bound an employee not to compete with the employer in a general business without limitation as to time or area, was void on its face as being an unreasonable restraint of trade and therefore was unenforceable either in whole or part. *Reading Aviation Service v. Bertolet,* 454 Pa. 488, 311 A.2d 628 (1973).

The instant non-competition clause did not include any time or geographical restrictions, nor did it provide any kind of restrictions on the kinds of employment its former employees would seek; rather, it was a blanket prohibition against any former employee from working in any capacity for any company deemed by the appellee-employer to be a competitor. The record does not reflect that the appellee-employer had any compelling reason for imposing such a stringent non-competition requirement upon the appellants other than the retention of its employees. The appellee-employer has not alleged that any of the appellants possessed trade secrets or confidential customer information which could be used by their competitors to the appellee-employer's detriment. *See Morgan Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957) (a non-competition covenant will be upheld for a reasonable amount of time if the former employee is the possessor of trade secrets); *see also Bell Fuel Corp. v. Cattolico,* 375

Pa.Super. 238, 544 A.2d 450 (1988) (A covenant in an employment contract which prohibited a former employee from soliciting former customers in perpetuity may be modified to be a reasonable time period when the former employer only sought its enforcement for a two year period).

However, the facts in the instant case do not indicate that a modification of the non-competition clause is feasible. The appellee-employer has not sought to use the non-competition clause as a means of preventing the appellants, as the possessors of trade secrets or confidential customer information, from working for a competitor for a reasonable amount of time. Rather, they have sought to use the clause to effectuate a pension forfeiture.

It is well settled that forfeitures are not favored in the law and are to be strictly construed, *In re Estate of Fisher*, 442 Pa. 421, 276 A.2d 516 (1971); *In re Zanfino's Estate*, 375 Pa. 501, 100 A.2d 60 (1953), especially in cases involving employee pensions. *See Forrish v. Kennedy*, 377 Pa. 370, 105 A.2d 67 (1954); *Siegel v. First Pennsylvania Banking and Trust Co.*, 201 F.Supp. 664 (1961). Employment contracts containing provisions for retirement pay are to be construed liberally to effectuate the declared intention of the parties to pay additional compensation for services rendered in the past. *Kline v. Morrison, supra.*

Although, in *Garner v. Girard Trust Bank*, 442 Pa. 166, 275 A.2d 359 (1971), our Supreme Court upheld a non-competition clause which allowed for a pension forfeiture, the facts in that case are clearly distinguishable from the instant case. In *Garner*, the non-competition clause was limited to a two year time period, while instantly the clause contained no such limitation and basically prohibited the appellants from pursuing employment in their chosen field of occupation forever.

Therefore, we find that the instant non-competition clause which prohibited the appellants from pursuing their drafting careers with anyone other than the appellee-employer is analogous to the non-competition clause which our

Supreme Court held invalid in *Reading Aviation Service v. Bertolet, supra,* which prohibited a former employee from pursuing his chosen occupation in the general field of aviation permanently. In both cases, the employers placed undue hardship on the employees without making any showing that the restrictions were necessary for the employers' protection. Thus, we find that the instant non-competition clause has failed to meet the requirement that it must be reasonable as to time and territory. *See Henschke v. Moore,* 257 Pa. 196, 101 A. 308 (1917); *Keeler v. Taylor,* 53 Pa. 467, 91 Am.Dec. 221 (1866).

Moreover, we find that the appellee-employer's own actions over a period of years such as: the failure to bid on new work, the elimination of pay raises, the cessation of its traditional policy of paying annual bonuses to the employees, pay cuts, and employee lay offs, were entirely inconsistent with its stated purpose for imposing the non-competition pension forfeiture clause as a means of retaining its skilled employees. As the appellee-employer's actions indicated to the appellants that their former employer was in the process of withdrawing from competition and their prospects of long-term employment with the company were very bleak, they quite naturally sought and obtained other employment.

Accordingly, the invalid non-competition clause had already outlived its usefulness to the appellee-employer at the time the appellants left its service; thus, it was unreasonable and unduly harsh for the appellee-employer to insist upon its strict enforcement as a means of divesting the appellants from their pensions and retaining the proceeds. *See Sidco Paper Co. v. Aaron, supra; Girard Investment Co. v. Bello,* 456 Pa. 220, 318 A.2d 718 (1974); *Bettinger v. Carl Berke Associates, Inc.,* 455 Pa. 100, 314 A.2d 296 (1974); *Quaker City Eng. Rebuilders v. Toscano, supra,* (Restrictive employments covenants are valid only if they are reasonably necessary for the protection of the employer.) *See also Forrish v. Kennedy, supra; Levitt v. Billy Penn Corp., supra,* (The courts can compel the trustees of

a pension plan to exercise their discretion within the bounds of reasonable judgment). Therefore, as the instant non-competition clause has failed to meet all of the criteria set forth by our Courts for its enforcement and the actions of the appellee-employer were completely contradictory to its stated purpose for imposing the non-competition clause in the first place, we find the clause to be void on its face and therefore, not subject to enforcement.

Due to our finding that the instant non-competition clause is void and unenforceable, we need not address the merits of the second issue raised by the appellants. However, our disposition of the first issue requires us to determine whether all of the appellants have met the other valid eligibility requirements established by the appellee-employer in order to ascertain their entitlement to the payout of pension benefits.

The appellees have specifically contended that two of the appellants, Edward Kriscunas and Albert Mack, do not meet the other eligibility criteria established by the appellee-employer for participation in the pension plan. The appellees argue that appellant Kriscunas did not meet the age requirements for vesting in the pension plan and appellant Mack did not have the required length of service under the IPG to become an inactive vested participant.

Section I of the IPG provides that a person can acquire a vested inactive status upon termination if he qualifies under Section XII. To become a participant under Section XII, the employee must have, under IPG Section III, completed four years and six months of credited service and have reached the age of thirty-five years. (The GDAP age requirement was thirty-four years and six months). Although appellant Kriscunas had ten years and nine months of credited service at the time of his termination, he had only attained the age of thirty-one years and seven months at the time of his termination; thus, he failed to reach the requisite age for vesting for either active or inactive purposes, and the appellee-employer properly denied him pension benefits.

Appellant Mack, however, appears to qualify as an inactive vested participant. Mack began his employment with the appellee-employer on August 15, 1956 and left its service for the first time on December 1, 1960. Mack was later reemployed by the appellee-employer on August 16, 1965 and credited with four years and three months of prior service. When Mack left the service of the appellee-employer for the second time on February 15, 1973, he had acquired seven years and six months of unbroken service and four years and three months prior service. The appellees argue that Mack was required to have five years of uninterrupted service under the IPG agreement in order to be a vested participant. However, under the GDAP agreement, an employee became an active participant after the completion of four years and six months and had attained the age of thirty-four years and six months. Mack, who was born on June 2, 1926, had fulfilled both the length of service and age requirements before the IPG agreement took effect on November 15, 1970. Thus, Mack had already vested in the pension plan under the GDAP agreement and is entitled to receive pension benefits. Accordingly, we find that all of the appellants except Kriscunas are qualified as inactive participants in the pension trust and are entitled to receive either a pension annuity or a lump sum payment from the pension trust.

For the reasons stated above, we reverse the judgment entered in the trial court as to all of the appellants except Kriscunas and remand this case to the trial court for a determination of the amount of pension benefits due to each of the appellants. As to appellant Kriscunas, the judgment is affirmed.

Jurisdiction relinquished.

TAMILIA, J., files a concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting:

This is an appeal from the judgment entered after the trial court, sitting without a jury, entered an Order in favor

of defendants/appellees, finding appellants had forfeited their pensions by taking employment with competing companies. Appellants, former employees of Auburn and Associates, Inc. (Auburn), now argue they are entitled to pension benefits under agreements entered with their prior employer. While I agree with the final result reached by the majority, I respectfully dissent to the holding that the forfeiture clause in this case violates public policy. My analysis, instead, focuses on the inequitable nature and harshness of the forfeiture provision when applied to the facts in this case. Those facts have been accurately summarized by the majority and will not be repeated.

As stated in the majority Opinion, appellants propose two issues for our review: (1) whether the non-competition clause in the IPG, which results in the forfeiture of vested pension benefits, violates the public policy of this Commonwealth and is therefore unenforceable; and (2) assuming *arguendo* the noncompete forfeiture clause is valid, whether the employment of appellants by existing companies which employ draftsmen and design engineers results in conduct which is inimical to the economic interests of their former employers. While the majority need not address the second issue having found the non-competition clause in this case to be void and unenforceable, I disagree with that holding and accordingly proceed to address both issues.

I believe the holdings of *Rochester Corp. v. W.L. Rochester, Jr.*, 450 F.2d 118 (4th Cir.1971) and *Garner v. Girard Trust Bank*, 442 Pa. 166, 275 A.2d 359 (1971), which appellants attempt to distinguish from the present case, and upon which the trial court relied to support its decision, do support the validity and enforceability of the non-competition clause in the pension plan. I would hold that such provisions in a pension plan, which have been eliminated since 1976 pursuant to Federal Legislation, are not per se invalid. *See* ERISA, 29 U.S.C.A. § 1144.[1] I believe, how-

1. The federal legislation, however, recognizes a change in the manner in which government and society perceive pension programs and provides protection for the worker from withdrawal of vested pension

ever, they cannot be interpreted in a vacuum. To do so is fundamentally unjust and creates a windfall and unjust enrichment either for the corporate directors, trustees, shareholders or remnants of employees who managed to survive a slow and persistent decline in the business, if not an actual withdrawal from competition.

A forfeiture clause retains vitality as a restriction against competition only so long as the firm remains in competition, the niceties of the distinction made in earlier cases between restraint on future competition contained in employment contracts, as opposed to restraint against joining a competitor if pension rights are to be preserved, notwithstanding. *See Rochester Corp.* and *Garner, supra.* In either instance, a restriction is for the purpose of retaining trained and skilled persons in order to remain competitive and to deny such skilled persons to a competitor or to prevent employees from becoming competitors to the ultimate harm of the parent company. Since most pension plans require financial and other input from the employer and probably continued viability of the company to maintain their integrity, even if the employee becomes vested, his termination to work for a competitor could conceivably work against the best interest of the pension plan. All of this presupposes the initial company to be a going concern and the employees to be provided the employment opportunities and compensation for which they bargained at the time they entered into the pension plan.

All of the cases relied upon by the majority deal with limitations on direct competition with the employer in terms of time, geographic distance or in the retaining and solicitation of customers of the original employer. Those cases

rights. Very recently, in *PBGC v. LTV Corp.,* 496 U.S. ——, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990), the United States Supreme Court determined that in filing for bankruptcy, corporations may not arbitrarily terminate pension programs thereby divesting employees of their interest in pension funds requiring that Pension Benefit Guaranty Corporation assume responsibility for their payment. Pursuant to ERISA, such plans in the private sector are protected to permit retirees and terminated employees to obtain the benefits for which they bargained.

have been construed to limit the influence such a clause can bring to bear upon the employee's future livelihood and, as such, are rather strictly construed. The clause at issue here might be broadly construed as a restriction on competition, but it does not effect the ability of the employee to seek and obtain immediate employment in the area in direct competition with the former employer. The restriction, rather, is to prevent such an employee from receiving benefits paid entirely by the first employer, conditioned on continued employment or, at the least, not engaging in employment which would compete with the employer. What has changed is the public and governmental perspective of such benefits as being vested, deferred compensation as opposed to an employer's gratuitous but conditional benefit. As such, the majority's discussion and reliance on cases and law relating to restrictive covenants on competition is totally misplaced and irrelevant to the issue here. In addition, I am aware of no Supreme Court case that has ruled such a clause to be violative of public policy and we, as an intermediate appellate court, may not make such a finding in the face of the continuing presence of *Garner, supra.*

Here, the facts make out a strong case of a corporation in gradual decline, and in later years moving toward self-extinction. The firm reduced employee numbers from 650 to 50 over ten or fifteen years, and froze and reduced wages thereby placing its employees in a position requiring them to seek employment elsewhere while it was available or facing likely termination of employment and restricted job opportunities. The employees were trapped in a total restructuring of the industrial and economic base of society, which was totally unanticipated by management or labor. Such were not the conditions upon which a forfeiture was intended to apply to employees who terminate to join businesses which are actively in competition with the parent firm. Pensions have been held to be deferred compensation and to vest after a reasonable time. *Lowe v. Jones,* 414 Pa. 466, 200 A.2d 880 (1964); *Newport Twp. v. Margalis,* 110

Pa.Commw. 611, 532 A.2d 1263 (1987). The employee parties to this action have from 10 to 19 years service and most terminated their employment within a year or two prior to the company's dissolution. None entered into direct competition with their employer, although all joined competing firms. Most were low level employees whose role in the competing companies had no significant effect on the increase in competition from the other firm or decline in competition by the parent firm. Their employment with the competing firm was irrelevant to the appellee's decline or the competitive edge maintained by the new employer. The result applied in this case is harsh and inequitable and is precisely that to which the law refers in asserting forfeitures are not favored. *In re Estate of Fisher*, 442 Pa. 421, 276 A.2d 516 (1971). The trial judge, while abiding by the case law, recognized the harshness of the provision as applied to this case and a need for appellate courts to reconsider the holdings of earlier cases, particularly in light of recent cases restricting the scope and severity of employment contract provisions against competition. *Blackwood, Inc. v. Caputo*, 290 Pa.Super. 140, 434 A.2d 169 (1981).

For these reasons, while I agree with the majority's decision to reverse the judgment entered in the trial court as to all appellants except Kriscunas and direct that the pension rights of these 19 appellants be enforced against the pension plan, and as to appellant Kriscunas, to affirm the judgment, I disagree with the determination that the forfeiture clause in this case violates public policy of Pennsylvania.