PILOT AIR FREIGHT
CORPORATION,
Plaintiff,

v.

**SANDAIR, INC., Eric Sandler and JoAnn Sandler, Defendants.**

Civil Action No. 99–4355.

United States District Court,
E.D. Pennsylvania.

Oct. 26, 2000.

David Smith, Philadelphia, PA, for plaintiff.

William H. Ewing, Philadelphia, PA, for defendants.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff Pilot Air Freight Corporation ("Pilot") filed suit against Sandair, Inc. ("Sandair"), Joann Sandler ("J.Sandler") and Eric Sandler ("E.Sandler") (collectively referred to as "defendants" or "Sandair"), for violation of the Lanham Act (Counts I, IV, and IX), Pennsylvania and Federal Wiretapping Statutes (Counts II & III), and for state law claims including tortious interference with a contract (Count V), misuse of confidential information and misappropriation of trade secrets (Count VI), unjust enrichment (Count VII), unfair competition (Count VIII), breach of contract (Count XII) and breach of implied covenant of good faith and fair dealing (Count XI).[1] Defendants counterclaimed for breach of contract (Counterclaim I), unjust enrichment (Counterclaim III), and two counterclaims for tortious interference with a contract (Counterclaims V & VI).[2]

Currently before this court are the motion of plaintiff for partial summary judgment (Document No. 16) and the motion of defendants for summary judgment (Document No. 17), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Upon consideration of the motions of plaintiff and defendants, and the responses and the related papers thereto, the motions will be denied.

## I. Background:

Plaintiff Pilot is in the freight forwarding business. Pilot's trademark, "Pilot Air Freight" (the "Pilot mark") was registered with the United States Patent and Trademark Office around February 8, 1983. In 1992, defendants J. Sandler, who was at the time an employee of Pilot's Connecticut station, and E. Sandler, who was at the time employed by a competitor of Pilot, entered into discussions with Pilot about the possibility of operating Pilot's Hartford station. Pilot gave the Sandlers a loan to set up the station, which the Sandlers named Sandair, Inc.

Pilot drafted a "management agreement" and the parties negotiated its terms; however, these talks never led to the actual signing of any formal agreement by either party. Plaintiff alleges that defendants had agreed to all the terms of the management agreement, and the only reason defendants never signed it was because of a possible Connecticut sales tax imposition. (Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 3.) Plaintiff asserts that the parties operated under the terms of the agreement despite the fact that it was never signed. (*Id.* at 4.) Defendants counter that the parties were operating under a "day-by-day" contract which varied from the terms of the management agreement and was terminable at-will. (Defs.'s Br. in Supp. of Defs.'s Mot. for Summ. J. ("Defs.'s Br.") at 4.)

---

1. The complaint also contained a request for an injunction which was dismissed without prejudice. (Document No. 12.)

2. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 based upon the citizenship of the parties as diverse and the amount in controversy exceeds $100,000, exclusive of interest and costs. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 based upon claims arising under the laws of the United States.

The relationship between the parties unraveled in the summer of 1999. E. Sandler testified at his deposition that on April 29, 1999, he signed an agreement with Target Logistics Services, Inc. ("Target"), a competitor of Pilot, to begin to conduct business with them starting July 31, 1999. (Dep. of E. Sandler at 128.) The actual date that Sandair began working with Target seems to be August 9, 1999. (Pl.'s Mem. at 6 and Defs.'s Br. at 4) (citing facsimile sent around August 4, 1999.)

On July 2, 1999, Sandair mailed a letter on Pilot letterhead to all customers which explained that Pilot had "just completed enhancing our telephone system" and provided new telephone numbers. The record contains conflicting evidence as to whether the phone system was actually enhanced. In addition, during the summer of 1999, defendants printed business cards with the Pilot logo and the new telephone numbers. Around August 4, 1999, the Sandlers sent a letter to Pilot via facsimile that, effective August 9, 1999, Sandair "would no longer do business as Pilot Air Freight." On August 6, 1999, the Sandlers mailed a second customer letter on Pilot letterhead. Under the header "NEW NAME—SAME PEOPLE," the letter explained that, "[t]he staff at Sandair Systems Inc., formerly known as Pilot Air Freight, is pleased to announce that effective August 9, 1999 we will begin representing a new transportation company, Target Logistic Services." The new telephone numbers listed in the July 2nd letter were listed once again. Plaintiff relies on deposition testimony of many customers for the assertion that these written documents, in addition to oral statements made by Sandair and/or Target employees, created confusion among the customers. (Pl.'s Mem. at 12–14.)

Plaintiff also alleges that in the week preceding August 6, 1999, defendants logged onto Pilot's computers, located in Lima Pennsylvania, from remote Connecticut terminals to "alter and delete customer information" in order to disadvantage Pilot. (*Id.* at 14–15.) Defendants counter that the only information removed from the system was the names of certain individuals Sandair considered as "contacts" for some customers. (Defs.'s Br. in Opp'n to Plt. Mot. for Partial Summ. J. at 7–8.) In addition, defendants contend that they had Pilot's authorization to use the computers to add, change and delete information. (*Id.*)

## II. Legal Standard for Summary Judgment

■ According to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). As to determining which facts are "material," the substantive law acts as a guide. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Additionally, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushia Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "A court may not weigh the evidence or make credibility determinations; these tasks are left to the factfinder." *Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party initially bears the burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The nonmoving party must then, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact and avoid summary judgment. *See Big Apple BMW, Inc. v. BMW of North Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). When opposing parties file cross-motions for summary judgment, the court must consider each motion separately, and "each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *United States ex rel. Showell v. Philadelphia AFL–CIO Hospital Ass'n.*, Civ. No. 98–1916, 2000 WL 424274, at *1 (E.D.Pa. Apr.18, 2000) (quoting *Nolen v. Paul Revere Life Ins. Co.*, 32 F.Supp.2d 211, 213 (E.D.Pa.1998)) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)).

## III. Discussion[3]

### *Federal Claims Arising out of the Lanham Act & Common Law Claim for Unfair Competition (Counts I, IV, VIII & IX)*

■ Both parties move for summary judgment on these claims.[4] I begin with the plaintiff's motion for partial summary judgment. Plaintiff relies on the same compilation of evidence to support its motion for partial summary judgment as to all claims arising under the Lanham Act, as well as the claim regarding the common law tort of unfair competition. A reasonable fact-finder could, based on this identical information, that the evidence presented proves a violation of one count, but not another. To illustrate, a reasonable fact-finder could decide that the evidence shows confusion as to the source of services (trademark infringement), but not as to the quality of services (false advertising), or vice versa. Thus, on this preliminary matter, I deny plaintiff's motion for partial summary judgment. Because this threshold issue shows a genuine issue of material fact, I will not now address the merits of the additional arguments presented by plaintiff.

■ I now turn to defendants' motion for summary judgment. In addressing the false advertisement claim, defendants' first argument seems to be that plaintiff cannot demonstrate that they made any false or misleading statements. Plaintiff disagrees and relies on, inter alia, the July 2nd and

---

3. The parties agree that all state law claims are governed by Pennsylvania law with one exception. The parties have determined that Connecticut law applies to only Counterclaims V & VI which both involve tortious interference with a contract. Neither party seemed to contemplate conflicts of law issues with respect to the remaining state law claims. The parties also agree that the outcome of that counterclaim would be the same if Pennsylvania law applied. I note that "[w]here the different laws do not produce different results, courts presume that the law of the forum state shall apply." *Financial Software Systems, Inc. v. First Union Nat'l Bank*, Civ. No. 99–623, 1999 WL 1241088, at *3 (E.D.Pa.1999) (citing *McFadden v. Burton*, 645 F.Supp. 457, 461 (E.D.Pa.1986)); *Denenberg v. American Family Corp.*, 566 F.Supp. 1242, 1251 (E.D.Pa.1983), *superseded on other grounds as explained in Miniscalco v. Gordon*, 916 F.Supp. 478, 481 (E.D.Pa.1996). Thus, I conclude that Pennsylvania law applies to all state law claims.

4. While defendants move for summary judgment on these claims, I find it perplexing that in their response to plaintiff's motion for summary judgment, defendants seem to argue that this Court should not grant summary judgment in the plaintiff's favor because there are genuine issues of material fact. I am left to wonder whether defendants wish to withdraw their motion for summary judgment as to these claims. Despite this confusion, I will give defendants the benefit of the doubt and assume they are not withdrawing their motion.

August 6th letters and the business cards as sources of defendants' misleading statements. I find that a reasonable fact-finder could determine that these written documents were misleading. Therefore, I deny defendants' motion for summary judgment as to this claim.

▮▮▮ Defendants next argue that plaintiff cannot prove their claim for trademark infringement because Pilot authorized Sandair to use its trademark/letterhead.[5] Pilot counters that it would never have authorized Sandair to use its trademark/letterhead to lure customers away from Pilot. I find that there exists a genuine issue of material fact as to whether defendants were authorized to use Pilot's trademark in the manner they used it. In the alternative, defendants argue that plaintiff cannot meet the likelihood of confusion standard. "Defendants do not dispute that there was confusion." (Defs.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 16.) Rather, they argue that any confusion was "eliminated by the steps defendants took to strip Sandair of all Pilot indicia as of the day it ceased doing business as Pilot." (Id. at 20.) I find that genuine issues of material fact exist regarding whether or not consumers were likely to be confused and whether or not that confusion was ever eliminated. Thus, I deny defendants' motion for summary judgment regarding this claim.

Defendants in addressing Pilot's claim under false designation seem to argue that Pilot fails to make out the "likelihood of confusion" element because every shipment made under the Pilot trademark was a Pilot shipment. Pilot responds by asserting that the written documents detailed above establish a likelihood of confusion. I find that a reasonable fact-finder could determine that such confusion arose from the written documents. Therefore, I deny defendants' motion for summary judgment with respect to this claim. In addition, because I have denied defendants' motion for summary judgment regarding the unfair competition claims under the Lanham Act, I deny their motion for summary judgment regarding Pennsylvania's common law tort of unfair competition.

### State Tort and Contract Claims & Counterclaims [6]

▮ Defendants move for summary judgment on each of these claims. Central to their argument for every one of these state tort and contract claims is their belief that the parties were operating under a day-by-day agreement which was terminable at-will by either party. Pilot, on the other hand, asserts that the parties were operating under the terms of the "management agreement." This dispute most certainly constitutes a genuine issue of material fact. Therefore, I deny defendants' motion summary judgment for these eight claims and counterclaims.

### Intentional Interference with Existing Contractual Relations (Counterclaims V. & VI)

▮ Defendants allege that Pilot wrongfully interfered with the employment contracts of Sandra Blumer and Kimberly Gajewski. Both parties move for summary judgment regarding this counterclaim. In order for defendants to succeed on this counterclaim, under Pennsylvania law, they must demonstrate:

(1) the existence of a contractual, or prospective contractual relation between itself and a third party;

---

5. Defendants do not contest plaintiff's contention that the marks are valid and legally protectable or that the marks are owned by plaintiff.

6. These include: Count VI: Misuse of Confidential Information and Misappropriation of Trade Secrets; Count V: Intentional Interference with Existing Contractual Relations; Count VI: misuse of confidential information and misappropriation of trade secret; Count VII & Counterclaim III: Unjust Enrichment; Count XI: Breach of Implied Covenant of Good Faith and Fair Dealing & Count XII/Counterclaim I: Breach of Contract.

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring;

(3) The absence of a privilege or justification on the part of the defendant;

(4) the occasioning of actual legal damage as a result of the defendants' conduct; and

(5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529 (3d Cir.1998) (citing *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979); *Birl v. Philadelphia Elec. Co.*, 402 Pa. 297, 167 A.2d 472, 474 (1960)). In Pennsylvania, a covenant not to compete "must relate to a contract for employment, be supported by adequate consideration and be reasonably limited in both time and territory." *Insulation Corp. of Am. v. Brobston*, 446 Pa.Super. 520, 528, 667 A.2d 729, 733 (1995) (citing *Davis & Warde, Inc. v. Tripodi*, 420 Pa.Super. 450, 454, 616 A.2d 1384, 1387 (1992)); *Bilec v. Auburn & Assoc., Inc. Pension Trust*, 403 Pa.Super. 176, 183, 588 A.2d 538, 542 (1991). More specifically, restrictions in non-compete covenants must be "ancillary to an employment relationship between the parties, ... reasonably necessary to protect the employer, and ... reasonably limited in duration and geographic extent." *Id.* (citing *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 591, 351 A.2d 250, 252 (1976)).

■ Plaintiff's first argument is that Pilot had no knowledge of the covenants, thus defendants as counterclaimants cannot prove that Pilot intended to interfere with the covenants not to compete. Defendants disagree, countering that Pilot knew of the contracts. Both parties turn to deposition testimony to support their claims. I find that because the support for these arguments rest on a credibility analysis, I must deny both motions for summary judgment. Because neither party has shown that no genuine issue of material fact exists with respect to the first element of the claim for wrongful interference with a contract, I will not now discuss the remaining arguments presented by the parties.[7]

### Counts II & III: Violation of the Pennsylvania's Wiretapping Statute & the Federal Wiretapping Statute

■ Under Pennsylvania law, "it is an offense to obtain, alter or prevent authorized access to a wire or electronic communication while it is in electronic storage by intentionally: (1) accessing without authorization a facility through which an electronic communication service is provided; or (2) exceeding the scope of one's authorization to access the facility." 18 Pa. C.S.A. § 5741. The federal wiretapping law is nearly identical, stating, "whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished...." 18 U.S.C. § 2701.

Defendants argue that their use of the computers leading up to their break with Pilot amounted to neither "access without authorization" nor "exceeded authorization." Pilot disagrees. There is a genuine dispute as to what information, if any, defendants altered or deleted from the computer system. In addition, there is a genuine dispute as to the specifics of the agreement binding the parties, which

---

**7.** Plaintiff also argues that the Court should dismiss these counterclaims because they were untimely filed. Plaintiff did not file a motion to dismiss the counterclaim, thus it knew of the contracts. Both parties turn has waived this minor defect. Plaintiff has failed to show any prejudice. Therefore, I will allow these counterclaims to proceed.

would control proper use and authorization of Pilot's computer system. Thus, I deny defendants' motion for summary judgment as to these related claims.

### Personal Claims Against Eric Sandler and Joann Sandler

█ The Sandlers, without citing any law, argue that summary judgment should be granted in their favor with respect to the claims brought against them individually. Their argument seems to be based on the belief that they cannot be held liable for the actions of Sandair. But, in Pennsylvania, employees and officials are liable for their own torts. *See e.g., Cosmas v. Bloomingdales Bros., Inc.,* 442 Pa. Super Ct. 476, 487, 660 A.2d 83, 88–89 (1995) ("Whether an employee is or is not acting within the scope of his or her employment . . . is only relevant in determining whether the employer can be secondarily liable for the employee's tort. In either case, the employee himself remains liable for his own torts."); *see also, Homenexus, Inc. v. Directweb, Inc.,* Civ. No. 99–2316, 1999 WL 959823, at *3 (E.D.Pa.) ("under the Lanham Act a 'corporate officer is individually liable for the torts he commits and cannot shield himself behind a corporation when he is an actual participant in the tort.' ")(quoting *Donsco, Inc. v. Casper, Corp.,* 587 F.2d 602, 606 (3d Cir.1978)). There exists genuine issues of material fact as to whether or not the Sandlers or either of them committed personal torts. Thus, I deny the motion for summary judgment regarding the claims against Eric Sandler and Joann Sandler individually.

In conclusion, there exist many genuine issues of material fact in this case, thus, I will deny both the plaintiff's motion for partial summary judgment and the defendants' motion for summary judgment. An appropriate order follows.

### ORDER

AND NOW, this 26th day of October, 2000, upon consideration of the motion of plaintiff for partial summary judgment (Document No. 16) and the motion of defendants for summary judgment (Document No. 17), and the responses and the papers related thereto, and having found for the reasons set forth in the forgoing memorandum that there remain genuine issues of material fact as to each motion and pursuant to Rule 56 of the Federal Rules of Civil Procedure, it is hereby **ORDERED** that the motion of plaintiff and the motion of defendants are each hereby **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall consult with each other and jointly report to the Court by November 1, 2000 as to the status of the possibility of settlement and whether negotiations by the parties or referral to another judicial officer for mediation would be likely to result in a settlement.